INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL UNION 20, APPELLEE, *v.* CITY OF TOLEDO, APPELLANT.

(No. L-87-166—Decided
April 29, 1988.)

*Gerald Daley,* for appellee.
*Sheldon M. Rosen* and *Edward M. Yosses,* for appellant.

*Per Curiam.* This case comes on appeal from a judgment of the Lucas County Court of Common Pleas, wherein that court held that appellant, the city of Toledo (hereinafter "city"), had violated the terms of a previously negotiated collective bargaining agreement entered into with appellee, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union 20 (hereinafter "union"). The trial court further issued an injunction to enjoin the city from refusing to arbitrate the grievance raised by the union under the terms of the collective bargaining agreement. A summary of the pertinent facts of this case follows.

On July 1, 1979, the union and the city entered into a collective bargaining agreement for a three-year term. This contract, which expired on June 30, 1982, was later enacted as a municipal ordinance, Chapter 6, by the Toledo City Council. Included in the agreement was a grievance procedure which provided for final and binding arbitration of "any controversy, complaint, misunderstanding or dispute arising from the interpretation, application or observance of any of the provisions herein or any supplement thereto."

The grievance leading to the present action arose under a contract clause providing that union members were to receive quarterly cost of living adjustments ("COLAS"), inclusive of July 1, 1982, and that all COLAS added during the previous year were to be built into the current base rate of pay for union employees in accordance with a contractually mandated formula.

During negotiations for a new contract in June 1982, the city informed the union that COLA payments were terminated and that no COLA would be forthcoming on July 1, 1982. The Toledo City Council then repealed the COLA provisions of the 1979 agreement on June 30, 1982. Appellee responded by filing a grievance on July 1, 1982, and alleged that appellant refused to pay the COLA in violation of the collective bargaining agreement. The city refused to arbitrate the grievance, asserting that the subject matter of said grievance was not arbitrable. Eventually, on June 4, 1986, the union filed suit in the court below seeking declaratory, injunctive, and monetary relief. Prior to a hearing on this cause, appellee filed a motion *in limine* requesting that certain evidence to be offered by appellant at trial be excluded as not relevant or material to the issue of the arbitrability of the grievance. The trial court granted this motion; at the subsequent proceedings appellant made a proffer

of all evidence that was deemed inadmissible by the court. Judgment in favor of appellee was entered on April 13, 1987. From this judgment appellant filed a timely notice of appeal and asserts as its two assignments of error:

"1. The trial court erroneously deferred the issue of arbitrability to the arbitrator thus violating the collective bargaining agreement and common law precedent.

"2. The trial court erroneously excluded material and relevant evidence which supports defendant's legal position that plaintiff's claim under cost of living adjustment provision in the 1979-1982 collective bargaining agreement is not arbitrable. Such evidence includes:

"a. The repeal of the cost of living provision from the 1979-1982 Labor Agreement.

"b. The settlement agreement Plaintiff made with Defendants [sic] in lieu of prosecuting their [sic] grievance.

"c. The Plaintiff's untimely filing of their [sic] grievance or laches.

"d. The filing of Plaintiff's grievance after the expiration of the labor agreement."

Both of appellant's assignments of error relate to a single issue, to wit, whether the grievance filed by appellee is subject to arbitration under the litigants' 1979-1982 collective bargaining agreement. Thus, Assignments of Error 1 and 2 shall be considered within the same general discussion.

Appellant's contentions focus upon the lower court's exclusion of evidence allegedly material and relevant to the question of arbitrability in the case *sub judice*. We agree with appellant's assessment of the materiality and relevance of the proffered evidence as to the merits of the present action. Nevertheless, this court concludes that case law makes clear that appellant has, on the whole, misperceived the role of the court in determining the arbitrability of a particular grievance.

It is unquestionably within the province of the court to decide whether a specific grievance is arbitrable. *United Steelworkers of America* v. *American Mfg. Co.* (1960), 363 U.S. 564, 570-571 (Brennan, J., concurring). See, also, *AT&T Technologies, Inc.* v. *Communications Workers of America* (1986), 475 U.S. 643, 649. However, in deciding whether a contract creates a duty to arbitrate a certain grievance, a court is not to "rule on the potential merits of the underlying claims." *Id.* at 649. The basic function of a court in ascertaining the arbitrability of a grievance is whether the claim is one supported by the collective bargaining agreement. *American Mfg. Co., supra,* at 568; *United Steelworkers* v. *Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 582-583; *John Wiley & Sons, Inc.* v. *Livingston* (1964), 376 U.S. 543, 546-547. Furthermore, an arbitration clause in a contract gives rise to a presumption that the particular grievance is arbitrable unless expressly excluded or there exists "the most forceful evidence of a purpose to exclude the claim from arbitration." *Warrior & Gulf Navigation Co., supra,* at 584-585. Hence, if an arbitration clause is broad, a court is strictly confined to a determination of whether, from the face of the contract, the parties agreed to submit the disputed term to arbitration. *AT&T Technologies, Inc., supra,* at 654-655 (Brennan, J., concurring). Absent an express exclusionary clause, only the most forceful evidence, as adduced from the bargaining history of the agreement itself, can then overcome the presumption of arbitrability. *Id.*

The relevant contract provisions in the case *sub judice* provide that the union has the option of submitting a

grievance to arbitration.[1] A grievance is broadly defined as "*any controversy,* complaint, misunderstanding or dispute arising from the *interpretation, application* or observance of *any of the provisions herein* or any supplement thereto." (Emphasis added.) Toledo Municipal Code, Section 6-3-6.2.

In reading the foregoing stipulations together, it is clear that a disagreement on the interpretation or application of any provision of the collective bargaining agreement was a matter that could be resolved through arbitration. Those clauses of the labor contract governing COLAS are obviously "any provision" within the meaning of the definition of "grievance" and are not expressly excluded within that contract.[2] Toledo Municipal Code, Section 6-3-14.2. Therefore, only the "most forceful evidence" of a purpose to exclude the COLA provision from arbitration can affect its arbitrability.

Appellant contends that the evidence excluded by the court below is of the requisite nature to mandate the preclusion of this particular grievance from arbitration. However, the question before us is not whether appellant's claims concerning laches, timeliness, settlement, or repeal bar appellee's right to arbitration. The court below merely construed the pertinent provisions of the collective bargaining agreement and determined that, *prima facie,* appellee was entitled to arbitration and that it was the province of the arbiter to interpret the contract and to decide thereon the issues involving the union's alleged right to a cost-of-living adjustment on July 1, 1982.

Appellant offers no evidence relevant to the history of this collective bargaining agreement tending to prove that the COLA provisions were to be excluded from arbitration. See *AT&T Technologies, Inc., supra,* at 655 (Brennan, J., concurring). The terms of the agreement itself are clear and unambiguous in providing for the arbitration of "any controversy, interpretation or application of provisions of the contract." Accordingly, we find that the collective bargaining agreement, in and of itself, grants the union the right to seek arbitration on an interpretation and application of the COLA provisions found therein.

The legal theories raised by appellant as to the materiality and relevance of the excluded evidence all bear upon the merits of the instant action. We, therefore, decline to consider those arguments and find, as did the trial court, that the majority of appellant's evidence is such that it should be offered during the arbitration process. We shall duly consider, however, two issues. First, appellant asserts that the court below improperly ruled upon the issue of the repeal of the COLA provisions by the Toledo City Council. We agree. This is a question to be raised at arbitration and was not dispositive of the single, narrow issue before the trial court. On that ground, we reverse and vacate that portion of the trial court's judgment referring to the city's repeal of the COLA provisions.

Second, on the issue of the timeliness of the filing of appellee's grievance, the United States Supreme Court has held that a grievance which arises after the lapse of a collective bargaining agreement is arbitrable even though there is no longer any contract between the parties. *John Wiley & Sons, Inc., supra,* at 553. See, also, *Nolde Brothers, Inc.* v. *Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO* (1977), 430 U.S. 243. The failure to expressly exclude from arbitration any contract disputes after

---

[1] See Appendix A, *infra.*

[2] See Appendix B, *infra.*

termination gives rise to the presumption that a contended provision of an expired agreement is enforceable. *Nolde Brothers, Inc., supra,* at 255. See, also, *Local 414* v. *Food Marketing Corp.* (N.D. Ind. 1986), 124 LRRM 2608 (Unless provisions of the contract raise an inference that the arbitrability of a disputed contract clause is terminated at the expiration of that contract the grievance is arbitrable after the lapse of the contract.). In so deciding that the disputed provision is arbitrable under the expired 1979-1982 contract in the present case, we do not address the merits of appellee's claim. We simply conclude that the fact that the grievance arose after the termination of the contract does not determine the arbitrability of the issue presented by that grievance. For the aforementioned reasons, we find appellant's first and second assignments of error not well-taken.

Upon consideration whereof, we find that substantial justice has been done the party complaining. The decision of the Lucas County Court of Common Pleas is affirmed as to the general judgment of declaratory and injunctive relief. However, that portion of the judgment specifically ruling that the passage of Ordinance No. 377-82 had or has no effect on the arbitration proceeding is, hereby, reversed and vacated. This cause is remanded to the court below for execution of judgment and assessment of costs. Costs assessed to appellant.

*Judgment accordingly.*

CONNORS,. HANDWORK and GLASSER, JJ., concur.

## Appendix A

### "Section 6-3-7.2 Definitions

"A grievance is hereby defined to be any controversy, complaint, misunderstanding or dispute arising from the interpretation, application or observance of any of the provisions herein or any supplement hereto."

### "Section 6-3-6.4 Arbitration

"If it is the decision of the Union to submit the grievance to arbitration, then the Union shall notify the Division of Employee Relations in writing within fifteen (15) days after the final answer of the City has been received by the Union.

"The City and the Union agree to the establishment and maintenance of a list of seven (7) arbitrators who shall serve on a rotating basis to hear the cases submitted to arbitration for the term of this agreement. The arbitrators shall be mutually agreed to between the parties and shall be from the American Arbitration Association and/or from the Federal Mediation and Conciliation Service list.

"The arbitrator shall conduct a hearing within thirty (30) days of the submission to arbitration, at a time, date and place mutually agreed to by the parties and shall render a decision within thirty (30) days of the conclusion of the hearing. The arbitrator shall not amend, add to or delete any provisions of this agreement.

"The fees and expenses of the arbitrator shall be shared equally. All other expenses for witnesses or otherwise shall be borne by the party incurring the cost. However, any City employee called as a witness by either side will continue to receive their [*sic*] regular rate of pay while attending such hearing for those hours they [*sic*] would have been scheduled to work."

## Appendix B

### "Section 6-3-14.2 Cost of Living Allowance

"In addition to the base rate paid in Section 1 of the Article, all em-

16

■■■■■■■■■■■■■■■■

ployees shall be entitled to receive a Cost of Living Allowance.

"A. The amount of the Cost of Living Allowance shall be determined as provided below on the basis of the Official All-Urban Consumer Price Index published by the Bureau of Labor Statistics, Department of Labor (1967 = 100) and hereafter referred to as the Consumer Price Index.

"B. Commencing with the first pay period beginning on or after July 1, 1979, and thereafter during the period of this agreement, adjustments in the Cost of Living Allowance shall be made at the following times:

"BASED ON CONSUMER PRICE INDEX FOR August 1979, November 1979, February 1980, May 1980 and at three month intervals therafter.

"EFFECTIVE DATE OF ADJUSTMENTS October 1, 1979, January 1, 1980, April 1, 1980, July 1, 1980 and at three month intervals thereafter.

"In no event will a decline in the Consumer Price Index below 214.1 provide the basis for a reduction in the base rates.

"C. The amount of the Cost of Living Allowance shall be adjusted for each three (3) month period based on a formula of a one cent (1¢) adjustment for each .4 change in the Index for the appropriate three (3) month period.

"D. Cost of Living Allowance increases supplemented subsequent to July 1, 1979 and through July 1, 1980 shall be added to the base wage rate effective July 1, 1980.

"Cost of Living Allowance increases implemented subsequent to July 1, 1980 and through July 1, 1981 shall be added to the base wage rate effective July 1, 1981.

"Cost of Living Allowance increases implemented subsequent to July 1, 1981 and through July 1, 1982 shall be added to the base wage rate effective July 1, 1982.

"E. In the event the Bureau of Labor Statistics does not issue the Consumer Price Index at the time referred to in paragraph 'B' of this Section, any adjustments required will be made at the beginning of the first pay period after the receipt of the Consumer Price Index, and shall become effective as of the effective date as set forth in paragraph 'B' herein."