OPINION
{¶ 1} Plaintiff-appellant Artex Oil Company, Inc. (nka Arloma Corporation) appeals the decision of the Noble County Common Pleas Court that stayed the declaratory relief action Artex filed against defendant-appellee Energy Systems Management of Ohio, Inc. and ordered the presented issue into arbitration. The issue ordered into arbitration deals with whether the parties' management agreement calls for the per month per well operating fee to be prorated according to the parties' well-ownership or whether the fee is to be paid entirely by ESMO. Appellant's main complaint on appeal is that the trial court erroneously found that the arbitration provision covers this dispute. For the following reasons, we hold that the current dispute is clearly not covered by the arbitration clause, and thus, this case is reversed and remanded.
 {¶ 2} Pursuant to a March 29, 1991 management agreement, ESMO owns a 75% majority working interest in certain wells, and the operator of these wells owns 25% of the working interest. Paragraph 1.2 of the agreement states, "E[S]MO shall pay Operator during the Term for Operator's services as Well operator the sum of One Hundred Seventy-Five Dollar ($175) per Well per month." This provision goes on to state that the fee covers all operating expenses except for various listed expenses that shall be paid by the entire working interest.
 {¶ 3} The operator assigned its interest to Artex. In 1993, Artex filed suit in Noble Case No. 93/62 against the prior operator and various others, including ESMO. The assignment of the management agreement was approved by the court in a November 1994 judgment entry. On January 10, 1995, the court ordered that the appointed receiver distribute funds as per an attached schedule, which listed the $175 per well per month fee as being solely chargeable to ESMO. ESMO consented to the distribution set forth in the exhibits by way of ESMO's attorney signing the entry.
 {¶ 4} Almost six years later in December 2000, ESMO demanded arbitration of its recent allegations that Artex had been overcharging on the operating fees from the beginning. ESMO alleged that the $175 per month per well fee should be split according to ownership of wells. Thus, ESMO argued that it should have only been liable for 75% of that fee or $131.25.
 {¶ 5} Artex filed a complaint for declaratory relief. Artex asked the court to declare that paragraph 1.2 of the management agreement required ESMO to pay the entire operating fee. Artex also asked the court to declare the arbitration clause in paragraph 9 of the management agreement inapplicable to the dispute. This arbitration clause provides: "Any dispute arising under this agreement involving the determination of fair market value, net proceeds from any Well or any interest therein or any other accounting or financial matter between E[S]MO and Operator shall be submitted to arbitration and the determination of the arbitrator shall be a mutually acceptable accounting firm * * *." Artex thus claimed the issue of whether the agreement requires ESMO to pay the entire operating fee is not an accounting or financial matter.
 {¶ 6} ESMO filed a motion to dismiss and/or a motion to stay the court proceedings and order the matter into arbitration. In responsive memoranda, Artex argued that even if the issue were arbitrable under the language of the agreement, there existed alternative reasons to deny arbitration such as issue preclusion, waiver, and estoppel. On November 16, 2001, the trial court released an entry finding that the disagreement over whether Artex should receive $175 per well or $131.125 per well was a dispute involving a financial matter. The court also noted that although the parties have been in litigation, the court has not issued any decision that fixed the monthly service charge. The trial court thus stayed the matter pending arbitration. Artex filed timely notice of appeal and presents the following sole assignment of error:
 {¶ 7} "THE TRIAL COURT ERRED IN GRANTING THE MOTION OF ENERGY SYSTEMS MANAGEMENT OF OHIO, INC. TO STAY THE ACTION AND ORDER ARBITRATION."
 {¶ 8} There are two main types of arbitration clauses, limited and unlimited. Didado v. Lamson (1992), 81 Ohio App.3d 302, 304. The clause at issue here can be considered limited as it specifies the types of disputes to which it applies rather than encompassing all disputes arising out of the contract. Pursuant to R.C. 2711.02(B), the court shall stay the trial of an action pending arbitration if the court is satisfied that the issue in the action is referable to arbitration under a written agreement, provided the applicant for stay is not in default in proceeding with arbitration. This statute inherently allows the trial court to examine the written agreement to determine whether the case should be stayed pending arbitration without waiting for the summary judgment stage where documentary evidence is typically presented.McGuffey v. LensCrafters, Inc. (2001), 141 Ohio App.3d 44, 50.
 {¶ 9} As a matter of policy, the law encourages arbitration.Gaffney v. Powell (1995), 107 Ohio App.3d 315, 320; Kline v. Oak RidgeBldrs., Inc. (1995), 102 Ohio App.3d 63, 65. There is a strong presumption in favor of arbitrability. Steubenville Firefighters UnionLocal No. 228 v. City of Steubenville (Sept. 28, 2001), 7th Dist. No. 00JE5; Didado, 81 Ohio App.3d at 304. As such, doubts and ambiguities concerning the interpretation of an arbitration clause should be resolved in favor of arbitration. Id; Gaffney, 107 Ohio App.3d at 320; Kline,102 Ohio App.3d at 65-66. "A clause in a contract providing for dispute resolution by arbitration should not be denied effect unless it may be said with positive assurance that the subject arbitration clause is not susceptible to an interpretation that covers the asserted dispute."Didado, 81 Ohio App.3d at 304. See, also, Wilharm v. M.J. Constr. Co.
(1997), 118 Ohio App.3d 531, 534; Neubrander v. Dean Witter Reynolds,Inc. (1992), 81 Ohio App.3d 308; Gibbons-Grable Co. v. Gilbane Bldg. Co.
(1986), 34 Ohio App.3d 170, 173. Hence, an arbitration clause should be enforced unless the court is firmly convinced that it is inapplicable to the dispute in question. Ervin v. Am. Funding Corp. (1993),89 Ohio App.3d 519, 521.
 {¶ 10} Artex alleges that the operating fee dispute is not arbitrable because it is not a dispute involving a financial matter but is merely a dispute concerning the meaning of a contractual provision in paragraph 1.2. Artex notes that paragraph 1.2 requires the arbitrator to be an accounting firm because such firm is needed to resolve accounting disputes involving an evaluation of fair market value or net proceeds; Artex points out that an accounting firm is not necessary to interpret contractual language. Artex also asks us to look at the specific examples of arbitrable issues given in paragraph 1.2 and notice how they involve discretionary valuations or accounting matters. ESMO counters that a dispute over the percentage of the operating fee to be paid by ESMO is a dispute involving a financial matter.
 {¶ 11} Although we might be inclined to reach a conclusion as to the ultimate issue of who is responsible for the well fee and set the amount of that fee, we decline to do so for the reason that a court is not to rule on the potential merits of the underlying claims when deciding whether a contract creates a duty to arbitrate a particular dispute. International Broth. of Teamsters v. City of Toledo (1988),48 Ohio App.3d 11, 13. Thus, we shall stay focused on the scope of the arbitration clause, i.e. whether the controversy concerning the allocation of fees is arbitrable.
 {¶ 12} Even though we conduct our inquiry with knowledge that arbitrability is favored, the language of the arbitration provision does not present ambiguities or leave doubt in our minds. Williams v. AetnaFin. Co. (1998), 83 Ohio St.3d 464, 471 (the presumption favoring arbitration only applies when the claim in dispute falls within the scope of the arbitration provision as the provision is reviewed in the same manner as any other contractual clause). Here, we are firmly convinced that the arbitration clause is inapplicable to the current dispute. SeeMcGuffey, 141 Ohio App.3d at 51 (noting that the question of whether claims are subject to arbitration is a question of law for the court to decide upon examination of the contract).
 {¶ 13} Whether paragraph 1.2 of the management agreement calls for ESMO to pay 100% of the operating fee is not a financial matter. See, e.g., Gillen Concrete Excavating, Inc. v. Fortney Weygandt
(July 16, 1997), 9th Dist. No. 96CA6525; Carter Steel Fab. Co. v.Davis Bldg. Constr. Co. (1998), 126 Ohio App.3d 251, 255 (both holding that an unambiguous promise to pay money does not fall within a clause calling for arbitration to resolve adjustments or to interpret contractual provisions). A matter does not become financial merely because its resolution may cause a party to pay more or less money for a service. The disputed issue for which Artex seeks declaratory relief is a pure legal question involving the plain language of the contract. See Kelmv. Kelm (1993), 68 Ohio St.3d 26, 28 (evaluating the plain language of the arbitration provision to determine the scope). Accordingly, we sustain Artex's argument that the dispute is not subject to the arbitration provision as a matter of law.
 {¶ 14} Artex alternatively argues on appeal that arbitration is barred by waiver, laches, estoppel, and issue preclusion. First, we note that Artex's laches argument was not expressly raised in the trial court below, and no misleading misrepresentation was outlined regarding the equitable estoppel issue. As for waiver, Artex urged that any right to arbitration was waived because ESMO did not file a motion to stay in the prior action and seek arbitration on the allocation of the operating fee and instead consented to a judgment entry that adopted a fee division which it now contests. ESMO countered that it filed a timely motion for stay in this proceeding which specifically concerned the fee dispute, whereas the prior trial concerned the fees only as an incidental item in an order to a receiver to make a certain distribution on a basis that was not "go-forward."
 {¶ 15} As aforementioned, if an arbitration clause applies, the court shall order arbitration "provided the applicant for the stay is not in default in proceeding with arbitration." R.C. 2711.02(B). The applicant's failure to timely seek a stay in a lawsuit filed by the nonapplicant can constitute waiver of the right to arbitrate. Petersonv. Crockett Constr. Co. (Dec. 7, 1999), 7th Dist. No. 99CO2. The court determines under the totality of the circumstances whether the applicant acted inconsistently with the right to arbitrate after the nonapplicant's filing of the prior action. Id. At any rate, Artex only argued the waiver doctrine in case the court found that the issue was arbitrable. Here, we have determined that the issue was not covered in the arbitration provision; hence, any issue surrounding whether ESMO waived their right to arbitrate is moot.
 {¶ 16} This leaves us with appellant's arguments concerning the doctrine of issue preclusion, which provides that a fact actually and directly at issue in a prior action, and passed upon and determined by the court, may not be relitigated in a subsequent action between the same parties or their privies, whether the cause of action in the action is identical or different. Fort Frye Teachers Assoc. v. SERB (1998),81 Ohio St.3d 392, 395. The question raised here is whether the fee allocation issue was "actually and necessarily litigated and determined" in the prior action. See Id.
 {¶ 17} Artex filed suit against various defendants in 1993; ESMO was one of these defendants. The trial court appointed a receiver to safeguard funds generated during the pendency of the action. An agreed judgment entry adjudicating declaratory relief was filed on November 4, 1994, ordering that all assignments from the prior operator to Artex are valid with respect to ESMO. On November 7, 1994, Artex filed a motion requesting that the funds held by the receiver be distributed and attached exhibits showing the proper distributees and the relevant time periods. Exhibit C clearly shows that 100% of the $175 operating fee was charged to ESMO. On January 10, 1995, the trial court adopted the proposed order set forth in Artex's motion. The court ordered the receiver to pay operating profits in the amount of $29,375 to Artex and cited their exhibit C. ESMO's attorney consented to this order by signing it.
 {¶ 18} ESMO argues that the fees were not "actually litigated and determined." ESMO notes that the main issue before the court was the assignment of the management agreement between Artex and the prior operator. To the contrary, Artex responds that the court's order determined the proper amount of fees by adopting the exhibit and ordering payment of the amount set forth in the exhibit. Artex states that ESMO approved the order and thus agreed to all amounts set forth.
 {¶ 19} The trial court issued a judgment ordering the case into arbitration. At this time, the trial court mentioned that it had not previously issued a decision fixing the monthly fee per well. However, the elements of "actually litigated and determined" can be satisfied through settlement or consent judgment. See In re Gilbraith (1987),32 Ohio St.3d 127, 129, citing Annotation, Modern Views of State Courts as to whether Consent Judgment is Entitled to Res Judicata or Collateral Estoppel Effect (1979), 91 A.L.R. 1170. See, also, Joseph D. BetturaConstr., Inc. v. Alpha Framing Const., Inc. (June 23, 1999), 7th Dist. No. 97CA8, at 4 (noting that an admitted issue is considered to have been actually tried and decided); Grant Fritzsche Ent., Inc. v.Fritzsche (1995), 107 Ohio App.3d 23, 24-25 (noting that issue preclusion requires the issue to have been admitted or decided); H.P. Nemenz FoodStores, Inc. v. United Food Commercial Workers Union, Local 880
(Sept. 25, 1995), 7th Dist. No. 93CA128 (holding that a consent judgment operates as res judicata with the same force given to any other judgment); Scott v. Cleveland (1984), 16 Ohio App.3d 429, 431 (consent decree has same collateral estoppel effects as other judgments resolving disputed issues).
 {¶ 20} Here, exhibit C was attached to Artex's motion for distribution in the prior action, putting the allocation of fees in dispute. ESMO did not object to the fee allocation at that time. Instead, it signed the distribution order. The trial court then adopted the proposed distribution and the exhibit which included the allocated operating fees. Issue preclusion is reviewed de novo as a matter of law. Although it may so far appear that ESMO is collaterally estopped from arguing that the management agreement does not require it to pay 100% of the operating fee, the application of issue preclusion cannot be addressed at this time.
 {¶ 21} First, Artex never moved for a definitive ruling on issue preclusion. Rather, it was mentioned as an additional reason in support of its argument that the court should not grant ESMO's motion to stay the case pending arbitration. We have just ruled that the trial court cannot stay the proceedings pending arbitration because the arbitration is inapplicable. Thus, appellant's issue preclusion argument falls to the wayside at this point. This leads to our second reason why issue preclusion can not be further dwelled upon by this court.
 {¶ 22} Application of the issue preclusion doctrine requires the review of filings from the prior lawsuit and other documents that were attached to memoranda below. These documents are outside the pleadings and should be reserved for the summary judgment stage of the proceedings. (Although, we note that Artex's motion for summary judgment will argue for judgment as a matter of law, regardless of issue preclusion, based on the plain language of paragraph 1.2 of the management agreement.) As the Supreme Court has stated, res judicata (which includes both claim and issue preclusion) is an affirmative defense as per Civ.R. 8(C) for which a Civ.R. 12(B) motion to dismiss may not be filed as the defense typically requires review of documents outside of the pleadings. State ex rel. Freeman v. Morris (1991), 62 Ohio St.3d 107,109 (holding that res judicata cannot be raised in a motion to dismiss but can be raised in a motion for summary judgment).
 {¶ 23} Hence, the proper procedure is for this court to reverse the trial court's decision on arbitrability, and remand for further proceedings such as a summary judgment motion on the language of the contract or on the matter of issue preclusion after the proper documentary evidence with affidavits is set forth. See ACRS, Inc. v. BlueCross Blue Shield of Minnesota (1998), 131 Ohio App.3d 450, 455
(implying that even in cases that are arbitrable, motion for stay pending arbitration is often delayed in order to resolve jurisdictional questions).
 {¶ 24} For the foregoing reasons, the judgment of the trial court is hereby reversed and this cause is remanded for further proceedings according to law and consistent with this court's opinion.
Donofrio, J., concurs.
DeGenaro, J., concurs.