OPINION
{¶ 1} The City of Dayton appeals from a judgment of the Montgomery County Court of Common Pleas, which denied its request for a declaratory judgment.
 {¶ 2} The facts and procedural history of the case are as follows.
 {¶ 3} In late 2003, the city sought to reduce the costs associated with the operation of its three golf courses. To that end, the city created a committee to identify ways to cut operating costs and to make the golf courses financially self-sufficient. The committee recommended that approximately twenty-six full- and part-time positions held by bargaining unit members of the Dayton Public Service Union, Local 101, American Federation of State, County, and Municipal Employees ("the union") be abolished and that thirty-one non-bargaining unit seasonal workers be hired to replace them. The city notified the union that it intended to follow this recommendation. Accordingly, in 2004, the city abolished several job classifications within the Department of Parks, Recreation, and Culture, Division of Golf. Although some of the abolished positions were vacant at the time, several employees in affected positions were required to exercise their "bumping" rights to find other employment within the city, as provided by the collective bargaining agreement. The union filed a grievance against the city in accordance with Article 24 of its collective bargaining agreement. The city denied the grievance, claiming that it was allowed to modify the Division of Golf's personnel to improve the Division's efficiency and effectiveness. The union then invoked the arbitration procedure set forth in the collective bargaining agreement.
 {¶ 4} The parties agreed upon an arbitrator and a hearing was scheduled. Four days before the hearing, the city submitted a motion to determine whether the grievance was subject to arbitration before a hearing on the merits was conducted. The arbitrator refused to conduct a separate hearing to decide the "arbitrability" of the grievance, preferring to address both issues at the hearing. The hearing was scheduled for March 7 and 8, 2005.
 {¶ 5} On February 22, 2005, the city filed a complaint in the trial court seeking a declaratory judgment as to whether the union's grievance was subject to arbitration under the terms of the parties' collective bargaining agreement. On June 3, 2005, the court conducted a hearing, after which the parties were permitted to file post-trial briefs. On September 16, 2005, the court concluded that the union's grievance fell within the scope of the collective bargaining agreement's arbitration provision. Thus, it denied the city's request for a declaratory judgment.
 {¶ 6} The city raises one assignment of error on appeal.
 {¶ 7} "THE TRIAL COURT ERRED BY DENYING THE CITY'S REQUEST FOR A DECLARATORY JUDGMENT AS THE GRIEVANCE IS NOT ARBITRABLE BECAUSE THERE IS NO ISSUE OF AMBIGUITY IN ARTICLE 21 OF THE CBA."
 {¶ 8} The parties' dispute centers on Article 21 of the collective bargaining agreement and the characterization of the action taken against the bargaining unit employees in the Division of Golf. Article 21 addresses promotions, layoffs, and recalls. The union claims that the employees in the Division of Golf were laid off, and that the city did not comply with Article 21 in doing so. The city contends that the employees were transferred, not laid off, and that Article 21 did not apply.
 {¶ 9} The relevant provisions of Article 21 are:
 {¶ 10} "ARTICLE 21 PROMOTIONS, LAYOFFS, AND RECALLS
 {¶ 11} "* * *
 {¶ 12} "Section 2. Layoffs and Recalls
 {¶ 13} "Whenever it is necessary to reduce the working force of the City, either for lack of work or lack of funds or due to subcontracting, employees shall be laid off based upon City-wide seniority in the following order:
 {¶ 14} "A. Seasonal, casual, emergency or temporary employees * * *.
 {¶ 15} "B. Permanent part-time employees * * *.
 {¶ 16} "C. Full-time employees * * *."
 {¶ 17} Articles 22 and 23 deal with "Interclassification Transfers" and "Transfers," respectively. Article 22 authorizes temporary transfers of not more than thirty days at management's initiative under certain circumstances. Article 23 permits employees to request transfers to a different location or shift under certain circumstances, and it specifies procedures for doing so.
 {¶ 18} Although the city maintains that the employees in question were transferred, rather than laid off, it does not rely on Articles 22 or 23 in support of this position. There is no indication in the record that the changes in the Division of Golf would be limited to thirty days, as contemplated by Article 22. The transfers contemplated by Article 23 must be initiated by the employee. Thus, it is clear from the language of these Articles that the actions taken by the city were not the type of transfers contemplated by the collective bargaining agreement, although they may be characterized as transfers in the more colloquial sense.
 {¶ 19} As the city points out in its brief, the actions taken in the Division of Golf also were not lay-offs, in the traditional sense of the word, as the affected employees remained employed, with their previous pay, benefits, and seniority. But lay-offs, as discussed in the collective bargaining agreement, arguably include necessary reductions in the work force caused by lack of work, lack of funds, or subcontracting. Thus, the reorganization of the Division of Golf could fall within this category.
 {¶ 20} The collective bargaining agreement's Grievance and Arbitration Procedure is set forth at Article 24. It is a five-step process culminating in arbitration through the American Arbitration Association. The grievance and arbitration procedures are to be invoked "[i]f any dispute or controversy arises between an employee and Management and/or the Union and Management with respect to the interpretation or application of this Agreement, or the rights, obligations or liabilities of the parties herein, except those covered under Article 25 of this Agreement." Article 25 sets forth the Discipline and Dismissal Procedure.
 {¶ 21} In our view, the dispute at issue herein — whether an involuntary transfer to another division constitutes a "layoff" under Article 21 — fits squarely within the definition of disputes that are to be resolved through the grievance and arbitration procedure because it involves the interpretation or application of the agreement.
 {¶ 22} Furthermore, where a contract contains a broad arbitration clause, a strong presumption exists that the parties agreed to arbitrate all disputes. ATT Technologies, Inc. v.Communications Workers of America (1986), 475 U.S. 643, 650,106 S.Ct. 1415, 89 L.Ed.2d 648; Toledo Police Partolman's Assn.,Local 10, IUPA, AFL-CIO-CLC v. Toledo (1998),127 Ohio App.3d 450, 459, 713 N.E.2d 78, discretionary appeal not allowed, (1998), 83 Ohio St.3d 1474, 701 N.E.2d 381. As the trial court aptly stated: "When a contract contains a standard arbitration clause[,] whether the parties agreed to submit disputes over a particular subject must be answered in the affirmative unless the contract contains explicit language stating that disputes respecting that subject are not subject to arbitration, or `unless the party opposing arbitration * * * adduces `the most forceful evidence' to this effect from the bargaining history.'Council of Smaller Enterprises v. Gates, McDonald Co. (1998),80 Ohio St.3d 661, 668, citing ATT Technologies, Inc. v.Communications Workers of Am. (1986), 475 U.S. 643, 654-55
(Brennan J., concurring). See also Prima Paint Corp. v. Floodand Conklin Mfg. Co. (1967), 388 U.S. 395, 87 S.Ct. 1801,18 L.Ed.2d 1270 (stating that the existence of a contract containing a broad arbitration agreement, which was admittedly signed by the contractual parties, creates a presumption that the parties agreed to arbitrate all disputes)."
 {¶ 23} In deciding whether a contract creates a duty to arbitrate a particular grievance, a court is not to address the potential merits of the underlying claims. ATT Technologies,Inc., 475 U.S. at 649; Internatl. Bhd. of Teamsters v. Toledo
(1988), 48 Ohio App.3d 11, 13, 548 N.E.2d 257.
 {¶ 24} The trial court correctly noted that only Article 25 of the collective bargaining agreement is explicitly excluded from the arbitration provisions. The fact that Article 25 was expressly excluded supports the presumption that all other provisions are subject to the arbitration provision. Moreover, the trial court's conclusion that the city had not brought forward "the most forceful evidence" that the parties had agreed not to arbitrate disputes related to Article 21 is supported by the record.
 {¶ 25} Alternatively, the city argues that a supplemental contract that was incorporated into the master contract (Exhibit 1, p. 108) excluded part-time service and maintenance employees from Article 21. Approximately half of those who were transferred in the restructuring of the Division of Golf were part-time workers. Thus, the city claims, these employees had no grievance because they lacked standing under Article 21, even if the full-time employees were entitled to arbitrate their claim. This proposition appears to be correct. However, in our view, this issue bears on the merits of the claim rather than whether it is subject to arbitration. Thus, we leave it to the arbitrator to determine whether some of the grievances are precluded because the affected employees worked part-time.
 {¶ 26} The city also contends that the trial court erred in considering its past practice of treating position abolishments as a type of layoff, noting that such extrinsic evidence is inappropriate when there is no ambiguity in the contract. Although evidence of past practices was offered at the hearing, the trial court made no reference to these practices in its decision. As such, we are unpersuaded that the trial court did consider this evidence.
 {¶ 27} Finally, we note that the trial court improperly commented on the perceived merit of the grievance in its decision, stating: "The evidence before the Court does not demonstrate any violation of Article 21 because Article 21 only deals with bumping rights when there has been a promotion, layoff or recall. In the Court's view, it does not deal with whether justification of job abolishment is required." The court then acknowledged that it must confine its decision to whether there was an agreement to arbitrate. Because the court should not have addressed the potential merits of the underlying claims,Internatl. Bhd. of Teamsters, 48 Ohio App.3d at 13, citingATT Technologies, Inc., 475 U.S. at 649, the arbitrator should disregard the court's comments in future proceedings.
 {¶ 28} The assignment of error is overruled.
 {¶ 29} The trial court's judgment that the issues raised herein are subject to arbitration will be affirmed.
Brogan, J., and Glasser, J., concur.
(Hon. George Glasser, Retired from the Sixth Appellate District, Sitting by assignment of the Chief Justice of the Supreme Court of Ohio).