[Cite as *Mingo Junction Safety Forces Assoc. Local 1 v. Chappano*, 2011-Ohio-3401.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| THE MINGO JUNCTION SAFETY FORCES ASSOC. LOCAL 1, et al., | ) ) ) | CASE NO. 10 JE 20 |
| PLAINTIFFS-APPELLEES, | ) ) | |
| - VS - | ) ) | OPINION |
| MAYOR DOMENIC CHAPPANO, et al., | ) ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from Common Pleas Court, Case No. 10 CV 543.

JUDGMENT:      Affirmed.

APPEARANCES:
For Plaintiffs-Appellees:      Attorney Michael W. Piotrowski
2721 Manchester Road
Akron, OH  44319-1020

For Defendants-Appellants:      Attorney Kristopher Haught
Scarpone Professional Bldg.
2021 Sunset Boulevard
Steubenville, OH  43952

Attorney Matthew Baker
913 Elcliff Drive
Westerville, OH  43081

JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl Waite
Hon. Joseph J. Vukovich

Dated:  June 29, 2011

DeGenaro, J.

**{¶1}** Defendants-Appellants, The Village of Mingo Junction, and Mayor Dominic Chappano appeal the September 21, 2010 judgment of the Jefferson County Court of Common Pleas overruling a motion for a permanent mandatory injunction sought by Plaintiff-Appellees, Mingo Junction Safety Forces Association Local No. 1, et al., and ordering the parties to engage in the grievance and arbitration procedures set forth in a collective bargaining agreement previously entered into by the parties.

**{¶2}** Appellants argue that the trial court erred by entering a final judgment before they filed an answer. Further, they argue that their due process rights were violated when the trial court entered a final judgment before they received notice and an opportunity to be heard. These arguments are meritless. The trial court's September 21 judgment only ruled upon Appellees' claims for injunctive relief, and Appellants were afforded notice and an opportunity to be heard on those claims. Accordingly, the judgment of the trial court is affirmed.

### Facts and Procedural History

**{¶3}** Appellee, Mingo Junction Safety Forces Association Local No. 1 is a labor organization that represents safety force employees employed by the Village of Mingo Junction.[1] Appellee, Joseph Sagun is the president of the Union. Appellant, Village and the Union entered into a collective bargaining agreement. Article 2, Section A of the CBA states that the agreement "shall run from August 20th, 2006 to August 15th, 2009." By agreement of the parties, this term had been extended to August 15, 2010.

**{¶4}** Article 34, Section 10 of the CBA states: "The current Collective bargaining Agreement shall continue until a new contract is agreed upon and signed, subject to the laws of the State of Ohio."

---

[1] As a village, which is a municipal corporation with a population of less than 5,000, see R.C. 703.01(A), Mingo Junction is not considered a "public employer" bound by Ohio's Public Employees' Collective Bargaining Act. See R.C. 4117.01(B).

{¶5} Further, Article 35, Section A states:

{¶6} "The procedures contained in this article shall govern all negotiations for a new collective bargaining agreement between the parties. Within ninety days of the expiration of this collective bargaining agreement. [sic] The parties shall continue in full force and effect all terms and conditions of this existing agreement unless and until a new or modified agreement is agreed upon or established by operation of this Article. The parties shall conduct all negotiations in accordance with this Article in good faith."

{¶7} The CBA also states that the grievance procedure, the final step of which is binding arbitration, "shall be the exclusive method of resolving both contractual and disciplinary grievances." The CBA broadly defines a grievance as "a dispute between the Village and members of the bargaining unit over [sic] alleged violation, misinterpretation or misapplication of a specific article(s) or section(s) of this agreement."

{¶8} According to Appellees, beginning on June 8, 2010 the Union repeatedly attempted to schedule negotiations for a successor CBA. However, the meeting was not ultimately scheduled until August 17, 2010. During that meeting, the Village asserted that because the contract term had expired it was under no obligation to negotiate or follow the CBA.

{¶9} The Mayor issued layoff notices to seven members of the Union, stating that as of September 10, 2010, seven of the eight sworn members of the Mingo Junction Police Department (everyone except for the Police Chief) would be laid off from their positions.

{¶10} The Union filed two class action grievances. The first concerned the Village's refusal to enter into negotiations, negotiate in good faith, or maintain the current CBA until another agreement was put in place. The second concerned the layoffs. The Mayor responded to the grievances in a letter to the Union president in which he asserted that the CBA had expired as of August 15, 2010 and that therefore the terms and conditions of the CBA were no longer in effect and that the Village was under no obligation to address the grievances.

{¶11} On September 7, 2010, Appellees filed a verified complaint for declaratory

judgment and temporary and permanent injunction, in which they requested the following relief:

{¶12} "(1) That the Plaintiffs and Defendants have a real and justiciable controversy that must be expeditiously resolved.

{¶13} "(2) That Plaintiffs are entitled to a declaration that the Defendants are required to rescind the lay-off notice dated August 24, 2010.

{¶14} "(3) That Plaintiffs are entitled to a declaration that the Defendants and its representatives and agents, are required to comply with Mingo Junction ordinance 140.01 and 141.12(A) and the Collective Bargaining Agreement.

{¶15} "(4) That Plaintiffs are entitled to a declaration that the Defendants and its representatives and agents, are required to comply with the terms of the existing collective bargaining agreement until such time as a new agreement has been negotiated as required by Article 34, Section 10 of the Collective Bargaining Agreement.

{¶16} "(5) That the Plaintiffs are entitled to the remedies requested in the form of a Temporary Restraining Order, a Preliminary Restraining Order and a Permanent Mandatory injunction enjoining the Defendants from implementing layoffs in the Village of Mingo Junction Police department, requiring the Defendants and its representatives and agents, to enforce Mingo Junction ordinance 140.01, ordering the defendant [sic] to comply with the collective bargaining agreement and ordering the Defendants to submit the resolution of its dispute with the Plaintiff to binding arbitration.

{¶17} "(6) That all costs in this matter be assessed against the Defendants." (Verified Complaint.)

{¶18} Appellees also filed a motion for a restraining order, preliminary injunction and permanent mandatory injunction. Appellees requested that the court enjoin Appellants from instituting the layoffs, and order Appellants to comply with Mingo Junction Ordinance 141.01 and 141.12(A) and the CBA. These local ordinances, which are referenced in the CBA, concern personnel and scheduling requirements for the police department.

{¶19} The day the complaint was filed a hearing on the TRO was held and

attended by counsel for both sides. As a result of this hearing the trial court granted the TRO/preliminary injunction. The trial court's decision turned, at least in part, on its conclusion that the Mayor was not the appointing authority for Mingo Junction.

{¶20} Specifically, the court ruled:

{¶21} "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the defendants, its officers, employees, servants, agents and attorneys shall be and are hereby restrained as follows:

{¶22} "1. From enforcing the layoff notices as the layoff notices issued by the Mayor shall not be effective as they were not issued by the appropriate appointing authority.

{¶23} "2. From undermining the provisions contained in the ordinance requiring a minimum complement of safety forces in the Village of Mingo Junction (Ordinance No. 141.01), as the same is currently staffed.

{¶24} "3. Further, plaintiffs are hereby granted the requested Temporary Restraining Order and Preliminary Injunction for a fourteen (14) day period (through September 21, 2010).

{¶25} "4. The parties are to submit memorandums of law or briefs in support of their position regarding the permanent injunction on or before September 17, 2010, to enable the Court to rule on the same on September 21, 2010, without an oral hearing.

{¶26} "5. The parties are urged to engage in negotiations regarding the police department staffing and the Collective Bargaining Agreement within the fourteen (14) day period.

{¶27} "6. No bond shall be required of the plaintiffs."

{¶28} Both sides filed briefs in support of their respective positions. Among other things, Appellants argued that assuming arguendo the court found the CBA was still in effect, injunctive relief would be precluded since the CBA provided an adequate remedy at law, namely arbitration.

{¶29} On September 21, 2010, the trial court entered a judgment entry overruling Appellees' motion for a permanent mandatory injunction and ordering the parties to

proceed with the grievances and arbitration. The trial court changed its earlier opinion about the identity of the appointing authority for Mingo Junction, now finding that it was the Mayor. The court concluded that Appellees would not suffer irreparable harm absent the injunction and that they had an adequate remedy at law, i.e., the grievance and arbitration procedures in the CBA. Notably, in so doing, the trial court did not determine whether or not the CBA had expired. Rather, it found that the CBA provided a forum to litigate that very question, along with the issue of whether Appellants violated the CBA by issuing layoff notices. Specifically, the trial court stated:

{¶30} "Therefore, the claims of the plaintiff that the CBA continues to be in effect and that the CBA has been violated by the defendants shall be handled in accordance with said grievance and arbitration procedures as agreed to between the parties previously in said CBA, and a mandatory permanent injunction is not warranted."

{¶31} Finally, the trial court did not address Appellees' claims for declaratory relief in the September 21 entry. And at the end of the entry the trial court included the Civ.R. 54(B) "no just cause for delay" language.

{¶32} Appellants filed a motion for additional time to answer or respond to Plaintiff's complaint, along with a request for hearing. Before the trial court could rule on that motion, Appellants filed a timely of appeal with this court.

{¶33} Appellants filed a motion for stay of execution of judgment pending appeal pursuant to Civ.R. 62 with the trial court which was overruled. Appellants then filed a stay motion with this court, which was granted on December 14, 2010. Specifically, this Court concluded that the Village was entitled to a stay as a matter of right pursuant to Civ.R. 62(C), and consequently stayed the portion of the court's September 21, 2010 order compelling Appellants "to engage in the grievance and arbitration procedures" from the previously entered CBA.

### Trial Court Ruling before Answer was Filed

{¶34} In their first of two assignments of error, Appellants assert:

{¶35} "The trial court erred in issuing a final appealable order on a complaint for declaratory judgment filed by the Plaintiff-Appellees before the Defendant-Appellants had

submitted an answer to the complaint and before the time to answer the complaint as prescribed by Ohio Civil Rule 12(A)(1) expired."

**{¶36}** Appellants are correct that prior to ruling on a claims for declaratory relief, the trial court must follow the civil rules and allow the defendants time to answer. See Civ.R. 7(A) and Civ.R. 12(A)(1). "The procedure for obtaining a declaratory judgment must be in accordance with the civil rules." *Galloway v. Horkulic*, 7th Dist. No. 02JE52, 2003-Ohio-5145, at ¶21, citing Civ.R. 57. See, also, *Hartley v. Clearview Equine Veterinary Servs.,* 6th Dist. No. L-04-1163, 2005-Ohio-799.

**{¶37}** Civ.R. 7(A) provides: "Pleadings. There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer."

**{¶38}** Civ.R. 12(A)(1) provides: "The defendant shall serve his answer within twenty-eight days after service of the summons and complaint upon him; if service of notice has been made by publication, he shall serve his answer within twenty-eight days after the completion of service by publication."

**{¶39}** Thus, it would be error for a trial court to rule on a declaratory judgment complaint before the defendant has been afforded time to answer pursuant to Civ.R. 12(A)(1) and assuming no Civ.R. 12(B) motion had been filed. Here, Appellants had until October 7, 2010 to answer the declaratory judgment action which is clearly after the trial court's September 21, 2010 judgment.

**{¶40}** However, as indicated above, the trial court did not rule on Appellees' claims for declaratory relief in the September 21 judgment. Again, those claims were as follows:

**{¶41}** "(2) That Plaintiffs are entitled to a declaration that the Defendants are required to rescind the lay-off notice dated August 24, 2010.

**{¶42}** "(3) That Plaintiffs are entitled to a declaration that the Defendants and its representatives and agents, are required to comply with Mingo Junction ordinance 140.01

and 141.12(A) and the Collective Bargaining Agreement.

**{¶43}** "(4) That Plaintiffs are entitled to a declaration that the Defendants and its representatives and agents, are required to comply with the terms of the existing collective bargaining agreement until such time as a new agreement has been negotiated as required by Article 34, Section 10 of the Collective Bargaining Agreement."

**{¶44}** The September 21 entry did not address those claims. The trial court did not declare that Appellants must rescind the layoff notices, or that Appellants must comply with Mingo Junction Ordinance 140.01 and 141.12(A) and all the terms and conditions in the CBA. Further, the court did not declare that Appellants are required to comply with the terms of the CBA until such time as a new agreement has been negotiated. Importantly, the trial court included the Civ.R. 54(B) language in the September 21 entry, making it immediately appealable, even if all the claims had not been disposed of. See, e.g., *Ankrom v. Hageman*, 10th Dist. No. 06AP-735, 2007-Ohio-5092, at ¶13 (concluding that denial of permanent injunction was final order, but where other claims remained, the Civ.R. 54(B) language was required to make it immediately appealable).

**{¶45}** Rather, the September 21, 2010 judgment entry only ruled on Appellees' claim for injunctive relief. Again, that claim stated:

**{¶46}** "(5) That the Plaintiffs are entitled to the remedies requested in the form of a Temporary Restraining Order, a Preliminary Restraining Order and a Permanent Mandatory injunction enjoining the Defendants from implementing layoffs in the Village of Mingo Junction Police department, requiring the Defendants and its representatives and agents, to enforce Mingo Junction ordinance 140.01, ordering the defendant [sic] to comply with the collective bargaining agreement and ordering the Defendants to submit the resolution of its dispute with the Plaintiff to binding arbitration."

**{¶47}** The trial court overruled Appellees' request for a permanent injunction because the CBA provided a remedy for the parties' disputes in the form of grievance procedures that culminate in binding arbitration. The trial court followed the proper procedure regarding Appellants' request for injunctive relief. See Civ.R. 65. Appellants

received notice of the complaint, the motion for TRO, preliminary and permanent injunction, and counsel for both sides appeared for a hearing on the TRO. Id. The trial court handled the TRO and preliminary injunction request together, which is proper where, as here, both parties had notice of, were present at, and participated in the hearing. See *Turoff v. Stefanec* (1984), 16 Ohio App.3d 227, 228, 475 N.E.2d 189. The trial court then granted the TRO/preliminary injunction and instructed the parties to brief the issue of whether a permanent mandatory injunction should issue, which both sides then did.

**{¶48}** The trial court ultimately overruled Appellees' motion for a permanent injunction, and dissolved the TRO/preliminary injunction since the parties had an adequate remedy at law to resolve their disputes, the grievance and binding arbitration procedures contained in the CBA. Thus, the court ordered the parties to engage in the grievance and binding arbitration procedures found in the CBA. It is this portion of the judgment that caused Appellants to appeal.

**{¶49}** One argument advanced by Appellees is that any error by the trial court in compelling the parties to engage in the grievance and arbitration procedures in the CBA was invited by Appellants, since one of their reasons for opposing the injunction was that the CBA provided an adequate remedy at law.

**{¶50}** Under the invited-error doctrine, "a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make." *State ex rel. Beaver v. Konteh* (1998), 83 Ohio St.3d 519, 521, 700 N.E.2d 1256. "Invited error is a branch of the waiver doctrine that estops a party from seeking to profit from an error that the party invited or induced." *Koch v. Rist* (2000), 89 Ohio St.3d 250, 256, 730 N.E.2d 963.

**{¶51}** In their memorandum contra to Appellees' motion for permanent injunction, Appellants argued: "assuming *arguendo* only, that Plaintiffs' assertions are true that the CBA remains in effect, the grievance procedure found therein constitutes an adequate remedy at law. Because the Plaintiffs have an adequate remedy at law there can be no entitlement to injunctive relief." (emphasis in original)

**{¶52}** Since Appellants couched the above argument as one made arguendo, at first blush it appears to be unfair to conclude that this constitutes invited error. However, Appellant did advance this argument to prevent the trial court from issuing the injunction. Thus, it is somewhat disingenuous to now complain on appeal that the trial court erroneously used that same reasoning to order the parties engage in the grievance and arbitration process. In effect, Appellants are attempting to use this argument as both a shield and a sword.

**{¶53}** Regardless, the court properly ordered the parties submit to the grievance and arbitration procedures in the CBA notwithstanding Appellants' assertion that the CBA had expired. "[A] grievance which arises after the lapse of a collective bargaining agreement is arbitrable even though there is no longer any contract between the parties." *Internatl. Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union 20 v. Toledo*, 48 Ohio App.3d 11, 14, 548 N.E.2d 257, citing *John Wiley & Sons, Inc.* v. *Livingston* (1964), 376 U.S. 543, 553, 84 S.Ct. 909, 11 L.Ed.2d 898; and *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO* (1977), 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300.

**{¶54}** Further, the CBA states that the grievance procedure, the final step of which is binding arbitration, "shall be the exclusive method of resolving both contractual and disciplinary grievances." Further, it broadly defines a grievance as "a dispute between the Village and members of the bargaining unit over [sic] alleged violation, misinterpretation or misapplication of a specific article(s) or section(s) of this agreement." The parties' disputes, whether the CBA remains in effect and whether Appellants violated it by issuing the layoff notices, are disputes that fall under the CBA's definition of grievance. Accordingly, the trial court properly ordered the parties to submit to the grievance procedures in the CBA but otherwise denied Appellees' request for injunctive relief.

**{¶55}** The trial court did not err by ruling on the claims for injunctive relief before Appellants filed an answer to the claims for declaratory relief. Accordingly, Appellants' first assignment of error is meritless.

**Due Process**

**{¶56}** In their second and final assignment of error, Appellants assert:

**{¶57}** "The trial court erred by denying the Defendant-Appellants due process of law when it issued a final appealable order granting declaratory judgment on a complaint for declaratory judgment filed by the Plaintiff-Appellees without providing the Defendant-Apellees [sic] notice and opportunity to be heard on the complaint."

**{¶58}** This assignment of error also presupposes that the trial court granted declaratory relief in the September 21, 2010 entry. However, as discussed above, the entry did not rule upon the requests for declaratory relief, but rather overruled Appellees' request for injunctive relief and ordered the parties to submit their disputes to binding arbitration.

**{¶59}** Appellants received notice of Appellees' Verified Complaint and motion for injunctive relief. Appellants attended a hearing on the TRO/preliminary injunction, and pursuant to the trial court's request, they submitted a brief regarding the permanent injunction. Thus, Appellants received notice and had an opportunity to be heard regarding Appellees' request for injunctive relief. Accordingly, Appellants' second assignment of error is meritless.

**{¶60}** In conclusion, both of Appellants' assignments of error are meritless. Both presuppose that the September 21, 2010 judgment ruled on Appellees' claims for declaratory relief. However, the judgment only ruled upon Appellees' claims for injunctive relief. Appellants were afforded notice and an opportunity to be heard on those claims. Accordingly, the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Vukovich, J., concurs.