[Cite as *Blanchard Valley Health Sys. v. Canterbury Holdings, Inc.*, 2012-Ohio-5134.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY


**BLANCHARD VALLEY HEALTH
SYSTEM, ET AL.,**

        **CASE NO. 5-12-08**

    **PLAINTIFFS-APPELLEES,**

    **v.**

**CANTERBURY HOLDINGS, INC.,**        **O P I N I O N**

    **DEFENDANT-APPELLANT.**


**Appeal from Hancock County Common Pleas Court
Trial Court No. 2010 CV 00405**

**Judgment Affirmed**

**Date of Decision: November 5, 2012**


**APPEARANCES:**

    *Barry W. Fissel and Scott A. Johnson* **for Appellant**

    *Stephen A. Rothschild and Nathan A. Hall* **for Appellees**

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Canterbury Holdings, Inc. ("Canterbury"), appeals the judgment of the Hancock County Court of Common Pleas granting Plaintiffs-Appellees' petition to submit the parties' dispute to arbitration and staying proceedings pending the outcome of arbitration. On appeal, Canterbury contends that the trial court erred in finding that the issues between the parties were subject to arbitration. For the reasons set forth below, the judgment is affirmed.

{¶2} Appellees, Blanchard Valley Health System ("BVHS") and Physicians Plus Urgent Care Center Condominium Unit Owners' Association ("Condominium Association"), filed an Amended Complaint and Petition for Arbitration on July 30, 2010, alleging that Canterbury violated the restrictive covenants applicable to the medical condominium property that Canterbury purchased from BVHS. BVHS, which provides a full continuum of health care services, developed an office building known as the Physicians Plus Urgent Care Center, which it converted into a condominium (the "Condominium") consisting of two units. BVHS retained ownership of the majority interest in the Condominium, identified as Unit 2, which it operates as an urgent care center. BVHS sold the portion of the Condominium identified as Unit 1 to Canterbury,

which is operated as a doctor's office, the oncological healthcare practice of Dr. Sharon Cole.

{¶3} Canterbury acquired Unit 1 from BVHS in February 2006, by Warranty Deed, which contained the following special use restrictions ("Use Restrictions"):

> a. The Grantee, and its successor, heirs, lessees and assigns shall only provide the following medical services to current patients or new patients of the Grantee * * *, and shall not offer these services to other medical professionals or to members of the general public who are not already patients or have newly become patients of the Grantee * * *: Physical Therapy; Occupational Therapy; MRI services; CAT scan services; radiological services, pharmacy services and laboratory services.
>
> b. The Grantee, and its successor, heirs, lessees and assigns, are prohibited from selling, assigning, conveying or leasing the Premises, by real property conveyance or by sale or assignment of the business assets of the Grantee * * * or an entity controlled by the Grantee * * * to any health care provider, health care organization or health care system that is in direct competition with the Grantor or is obtaining the Premises from Grantee * * * with their actual knowledge of said party's intent of entering into competition with the Grantor.

{¶4} Subsequently, in August 2006, the parties enlarged Unit 1 by signing a Real Estate Purchase Agreement ("Purchase Agreement"), transferring a portion of Unit 2 (the "Additional Premises") to Dr. Cole through Canterbury to become a part of Unit 1.[1] The Purchase Agreement contained essentially the same Use

---

[1] Rather than executing a separate deed transferring this Additional Premises to Dr. Cole or Canterbury, BVHS filed an Amendment to the Declaration of Physicians Plus Urgent Care Center Condominium, which removed the Additional Premises from the description of Unit 2 and added it to the description of Unit 1.

Restrictions as contained in the Warranty Deed. The Condominium Declaration also prohibited any unit owner, except BVHS, from selling, assigning, or conveying their Unit to anyone that is in direct competition with BVHS, or intends to compete with BVHS. The Condominium Declaration also incorporated the Purchase Agreement as part of the "condominium instruments."

{¶5} The dispute arose between the parties when Canterbury entered into an agreement with Lima Pathology Laboratories, Inc. ("Lima Pathology"), a known competitor of BVHS, to have Lima Pathology provide laboratory services. Appellees contend that the services being performed by Lima Pathology are in violation of the Use Restrictions applicable to the Unit 1 property. Appellees' Complaint and Petition for Arbitration maintains that Article XXII, Section 2 ("Arbitration Clause"), of the Condominium Declaration authorizes Appellees to demand that the dispute be submitted to arbitration.

> [I]n the event that any dispute between the Association and any Unit Owner or occupant, other than with regard to Assessments, is not settled by an agreement between them or Board hearing, the matter shall then be submitted to arbitration in accordance with and pursuant to the arbitration laws of Ohio then in effect[.]

(1/26/2012 J.E., quoting Declaration at Article XXII(2).

{¶6} Further, as a result of Canterbury's alleged breach, Appellees contend that they are entitled to specific enforcement of the Use Restrictions by injunctive relief or monetary damages if specific performance is not appropriate. Appellees

also assert that the trial court must stay any proceedings that are not subject to arbitration until the arbitration proceedings are complete.

{¶7} Canterbury claimed that the services being provided by Lima Pathology were not in violation of the Use Restrictions. Canterbury asserted that Appellees' claim was not subject to arbitration because it involved a dispute of title to or possession of real estate pursuant to R.C. 2711.01(B)(1), making it exempt from arbitration. Canterbury also sought dismissal of the claim for failure to state a claim upon which relief can be granted, pursuant to Civ.R.12(B)(6).

{¶8} The trial court found that the Arbitration Clause in the Condominium Declaration was applicable to this dispute and that the matter was subject to arbitration. "[A] dispute arising out of an alleged violation of the breach of covenants contained in the condominium instruments is not a dispute involving the title to or possession of real estate within the meaning of R.C. 2711.01(b)(1)." (1/26/2012 Judgment Entry and Order) However, the trial court did state that, under the wording of this Arbitration Clause, only the Condominium Association, and not BVHS, had standing to enforce the Arbitration Clause.

{¶9} The trial court did not rule on Canterbury's motion to dismiss because it found that when an action has claims that are both arbitrable and non-arbitrable, it is appropriate to stay the entire proceeding until the issues subject to arbitration

are resolved. Furthermore, it found that dismissal of a claim subject to arbitration was not a remedy authorized by R.C. 2711.01 et seq.

{¶10} The trial court granted the petition to compel arbitration and stayed all further proceedings, pending the disposition of the arbitrable claims. It is from this judgment that Canterbury now appeals, raising the following two assignments of error for our review.

### First Assignment of Error

**The court erred in concluding as a matter of law that the underlying controversy between the parties does not involve the title to or possession of real estate and that R.C. 2711.01(B)(1) does not apply.**

### Second Assignment of Error

**The court erred in failing to consider whether Physicians Plus Urgent Care Center Condominium Unit Owners' Association satisfied conditions precedent to the written agreement for arbitration.**

{¶11} Arbitration is encouraged as a method of settling disputes. See *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 1998-Ohio-294. "A presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision. An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." *Id.* at 471.

A court should not deny an arbitration clause in a contract unless it may be said with positive assurance that the clause is not susceptible of an interpretation that covers the asserted dispute, with any doubts resolved in favor of arbitration. *Union Twp., Clermont Cty. v. Union Twp. Professional Firefighters' Local 3412*, 142 Ohio App.3d 542, 548 (12th Dist.2001) citing *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170, 173 (8th Dist.1986).

{¶12} When an appellate court reviews a trial court's decision to stay judicial proceedings pursuant to the parties' agreement to enter into arbitration, the appellate court accepts the trial court's findings of fact that are not clearly erroneous, but reviews questions of law de novo. *Barhorst, Inc. v. Hanson Pipe & Prods. Ohio, Inc.*, 2006-Ohio-6858, ¶ 10 (3d Dist.). Cases, such as this, that involve contractual interpretation or statutory application are reviewed de novo, giving appropriate deference to the trial court's findings of fact. *See id.*; *Columbus Steel Castings, Inc. v. Real Time Staffing Servs., Inc.*, 10th Dist. No. L 3210659, 2011-Ohio-3708, ¶ 11.

{¶13} In the first assignment of error, Canterbury contends that arbitration is not the appropriate means to settle the present controversy because Canterbury claims that the issue involves "title to or possession of real estate," which is exempt from arbitration by statute. Canterbury does not dispute the fact that it

agreed to the Arbitration Clause in the applicable documents. It claims that the exception set forth in R.C. 2711.01(B)(1) exempts this matter from arbitration.

{¶14} Ohio's policy of encouraging arbitration has been codified by the legislature through the Ohio Arbitration Act in R.C. 2711.01 et seq. *Henderson v. Lawyers Title Ins. Corp.*, 108 Ohio St.3d 265, 2006-Ohio-906, ¶ 48. R.C. 2711.01(A) provides that an agreement to settle controversies by arbitration "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A). If an "action is brought upon any issue referable to arbitration under an agreement in writing for arbitration," the trial court, "upon being satisfied that the issue involved in the action is referable to arbitration * * * shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had." R.C. 2711.02(B).

{¶15} R.C. 2711.01(B)(1) creates an exception to the general rule concerning enforceability of arbitration clauses in Ohio. It provides that arbitration clauses in contracts "do not apply to controversies involving the title to or the possession of real estate." R.C. 2711.01(B)(1).

{¶16} Canterbury contends that "title and possession are at the heart of the breach of the Restriction on Sale," and therefore, this controversy falls under the exemption regarding the "title to or the possession of real estate" in R.C.

2711.01(B)(1). We do not find that Canterbury's conclusions are supported by the plain language of the Use Restrictions or the facts applicable to this case. First, there are *two* paragraphs containing restrictions, and only the second paragraph restricts Canterbury's right to sell or transfer its interest to a competitor.

{¶17} The first paragraph provides limitations on the type of services that Canterbury can provide and it limits the recipients of those services to current or new patients; specifically, Canterbury may not offer laboratory and other such services to the general public. The trial court found that "the controversy between [Appellees] and [Canterbury] does not involve ownership of either parcel but rather *the proper use* of the Units and whether restrictive covenants were violated." (Emphasis added. J.E. 8) The record supports the trial court's findings of fact concerning the nature of the controversy. Therefore, the exception to arbitration set forth in R.C. R.C. 2711.01(B)(1) is not applicable, and the matter is subject to arbitration concerning whether the services being provided by Lima Pathology are a violation of the Use Restrictions set forth in the first paragraph of those restrictions.

{¶18} Canterbury contends that "title and possession are at the heart of the breach" of the Use Restrictions referenced in the second paragraph of the restrictions, and therefore, this matter is exempt from arbitration because of that reason. (Appellant's Brief p. 9) Canterbury claims that the issue as to "whether

Canterbury transferred title to or possession of Unit 1 to Lima Pathology is fundamental to this case." (*Id.*) Again, we are in concurrence with the trial court's finding of facts on this matter.

> The facts before the Court, as they were alleged in the Amended Complaint, declare that [Canterbury] has contracted with Lima pathology and is permitting Lima pathology to provide laboratory services at Unit 1. These facts do not affirm [Canterbury] has given up title to or possession of Unit 1. Even though [Appellees] have requested injunctive relief, an injunction would not necessarily involve title to or possession of real estate.

(J.E. p. 7) Although Canterbury attempts to characterize the issue as involving title to and possession of real property, neither party disputes that Canterbury holds title to its condominium unit, and neither party has initiated an action to quiet title. The controversy here revolves around the *use* of the property, rather than title or possession. Nothing in the record indicates that Canterbury has transferred title or possession to Lima pathology. In fact, Canterbury affirmatively states in its brief that it "has not sold or leased Unit 1 to a competitor of BVHS." (Appellant's Brief, p. 4)

{¶19} The facts in this case closely parallel those in *Murtha v. Ravines of McNaughton Condominium Assn.,* 10th Dist. No. 09AP–709, 2010–Ohio–1325. In *Murtha*, the Tenth District Court of Appeals found that the dispute over the restrictions in the condominium's declaration documents prohibiting an owner from renting his unit was essentially a dispute involving contract interpretation; it

was not a dispute over who was entitled to possess the property or who holds title. *Id.* at ¶ 13. Such disputes do not fall within the exception to the validity of arbitration agreements outlined in R.C. 2711.01(B)(1), but rather, they fall within the general rule that disputes between condominium associations and unit owners are subject to arbitration under a valid arbitration clause. *Id.*

{¶20} Canterbury's arguments rely upon *Kedzior v. CDC Dev. Corp.*, 123 Ohio App.3d 301, 303 (8th Dist.1997), which holds that a case which will ultimately be decided on grounds that involve title to or possession of real estate should not be subject to arbitration. However, that case is distinguishable in that the plaintiff raised a claim for specific performance, *asking the trial court to award him title to and possession of property. Id.* at 303. In response to the plaintiff's action, the defendant moved the trial court to refer the matter to arbitration as provided in the purchase agreement. *Id.* at 302–303. The Eighth District held that because a final disposition of the plaintiff's claims would ultimately involve a determination on the claim for specific performance to compel possession and title, the matter should not have been referred to arbitration. *Id. See, also, Kent Partners v. Crossings at Golden Pond-Portage Cty., L.L.C.*, 11th Dist. No. 2010-P-0028, 2011-Ohio-2842 (matter in controversy between buyers of condominium units and sellers, whether buyers were entitled to specific performance of sales contracts and whether sellers were required to

provide buyers with title and possession of units, involved title and possession of real estate, and thus could not be referred to arbitration, under statute limiting ability of parties to arbitrate issues involving title and possession of real estate). The dispute in this case has nothing in common with the facts in cases such as *Kedzior* and *Kent*, other than they involve arbitration agreements applicable to real property. However, that alone does not mean that every controversy concerning real property involves "title to or possession of real estate."

{¶21} The arbitrator in this case will be charged with reviewing the Use Restrictions, reviewing Canterbury's relationship with Lima Pathology, and determining whether that relationship violates the Use Restrictions. No issue has been raised and no decision will be rendered concerning Canterbury's title to or possession of Unit 1. The determination of what conduct is permitted under the Use Restrictions, and specifically whether Canterbury can allow Lima Pathology to provide laboratory services in Unit 1, requires a review and interpretation of the contractual language chosen by the parties. The real estate exemption contained in R.C. 2711.01(B)(1) is not applicable to the issues raised in this case. Therefore, Canterbury's first assignment of error is overruled.

{¶22} In the second assignment of error, Canterbury asserts that the Arbitration Clause contains "conditions precedent" to arbitration, and that the matter should not have been referred to arbitration because Appellees failed to

comply with them. Canterbury states that the language stating that "in the event that any dispute between the Association and any unit owner * * *is not settled by an agreement between them, or Board hearing, *the matter shall then be submitted to arbitration*" should be interpreted to mean that these conditions precedent must be met before an issue is submitted to arbitration. (Emphasis added.) Canterbury claims that Appellees' alleged failure to provide it with notice and an opportunity to be heard was a violation of its procedural due process rights.

{¶23} Appellees maintain that procedural arbitrability issues, including contractual prerequisites to arbitration, must be resolved by the arbitrator, not the court, citing to *Baker-Henning productions, Inc. v. Jaffe,* 10th Dist. No. No. 00AP-36, 2000 WL 1664869 (Nov. 7, 2000). Further, Appellees assert that Canterbury's argument is baseless in that Canterbury was aware of Appellees' position that it was violating the Use Restrictions long before suit was filed; Appellees tried to resolve the conflict informally; and that Canterbury had notice of the lawsuit and request for arbitration. They argue that the plain language of the agreement does not contemplate a multi-step dispute resolution process – it simply states that if the parties do not resolve their differences, then the matter must be arbitrated.

{¶24} Given the parties' lengthy involvement in this matter and their current position, it seems apparent that Canterbury has been made aware of the issue and that agreement could not be reached between the parties. However, it is

appropriate that the arbitrator determine whether these claimed procedural prerequisites are material and whether they have been met. "Once it is determined * * * that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition would be left to the arbitrator." *Council of Smaller Enterprises v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 1998-Ohio-172, quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 556-557 (1964). *Accord*, *N. Elec. v. Amsdell Constr., Inc.*, 8th Dist. No. 85293, 2005 -Ohio- 4134, ¶ 21; *Council of Smaller Enterprises v. Gates, McDonald & Co.*, 8th Dist. Nos. 68510, 69868, 1996 WL 170020 (Apr. 22, 1996) (procedural questions, such as whether a party made a timely demand for arbitration, should be left to the arbitrator); *Bd. of Library Trustees, Shaker Hgts. Pub. Library v. Ozanne Constr. Co., Inc.*, 100 Ohio App.3d 26 (8th Dist.1995), ("Once arbitration is selected as the proper forum, the arbitrator determines all issues of procedural arbitrability, i.e., whether the party demanding arbitration has complied with all precedent conditions set forth in the agreement itself.")

{¶25} Procedural arbitrability falls within the purview of the arbitrator. Canterbury's second assignment of error is overruled.

{¶26} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW, P.J. and ROGERS, J., concur.**

**/jlr**