[Cite as *Riggs v. Patriot Energy Partners, L.L.C.*, 2014-Ohio-558.]

STATE OF OHIO, CARROLL COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| WILLIAM E. RIGGS, et al., | ) | |
| | ) | CASE NO. 11 CA 877 |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| | ) | |
| PATRIOT ENERGY PARTNERS, LLC, | ) | |
| et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Common Pleas
Court, Case No. 11 CVH 26885.

JUDGMENT:    Affirmed in Part, Reversed in Part
And Remanded.

JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: February 13, 2014

[Cite as *Riggs v. Patriot Energy Partners, L.L.C.*, 2014-Ohio-558.]
<u>APPEARANCES</u>:

For Plaintiffs-Appellants:

Attorney Brendan Delay
24500 Center Ridge Road
Suite 175
Westlake, OH  44145
For William L. Riggs, Brenda Riggs,
Roger Oyer and Beverly Oyer


For Defendants-Appellees:

Attorney William D. Dowling
Attorney Christopher S. Humphrey
Buckingham, Doolittle &
Burroughs, LLP
3800 Embassy Parkway, Suite 300
Akron, OH  44333-8332
For Patriot Energy Partners, LLC,
Andrew W. Blocksom, Thomas R.
Blocksom, Robert Dickey, Buckeye
Oil Producing Co., Bass Energy, Inc.,
Wimsatt Family, LLC, and Sonata
Investment Company, Ltd.

Attorney David M. Hardyman
Attorney Timothy B. McGranor
Vorys, Sater, Seymour and
Pease, LLP
52 E. Gay Street, P.O. Box 1008
Columbus, OH  43216-1008
For Chesapeake Exploration, L.L.C.

[Cite as *Riggs v. Patriot Energy Partners, L.L.C.*, 2014-Ohio-558.]
DeGenaro, P.J.

{¶1} Plaintiffs-Appellants, William and Brenda Riggs and Roger and Beverly Oyer, oil and gas lessors (the Property Owners), appeal the December 1, 2011 judgment of the Carroll County Court of Common Pleas granting the motion of Defendant-Appellee Chesapeake Exploration, LLC to stay the Property Owners' claims pending arbitration, pursuant to an arbitration clause in the leases, which were originally entered into between the Property Owners and Appellee Patriot Energy Partners, LLC.[1] On appeal, the Property Owners contend that the arbitration clauses are unenforceable because their claims are exempt from arbitration pursuant to R.C. 2711.01(B)(1); that the clauses are unconscionable; and that the clauses should not be enforced because the leases themselves, or the assignments of the leases are invalid under a number of theories.

{¶2} Upon review, the Property Owners' arguments are meritless, with the exception of the second assignment of error, in part. The Property Owners have not proven both substantive and procedural unconscionability; thus the arbitration clause is valid and enforceable. Any issues concerning the validity of the leases or the assignments are to be resolved via arbitration; those issues have no bearing on the enforceability of the arbitration clause. Moreover, the oil and gas company assignees to the leases had the right to seek arbitration, despite the fact that they were non-signatories to the original lease agreements.

{¶3} Finally, although most of the Property Owners' claims are subject to arbitration pursuant to R.C. 2711.01, the trial court erred by submitting the quiet title claim to arbitration because it is a controversy involving title to or possession of real estate and does not fall under any of the listed exceptions in R.C. 2711.01(B)(1). In cases where some claims are exempt from arbitration and others are not, trial courts properly stay claims exempt from arbitration until the claims subject to arbitration are resolved. In this case, the trial court properly required arbitration of those claims that do not purely involve the ultimate question of title; thus, until those claims are resolved

---

[1] The other Defendant-Appellees LMF Holdings, LLC, Andrew W. Blocksom, Thomas R. Blocksom, Robert Dickey, Buckeye Oil Producing Co., Bass Energy, Inc., Wimsatt Family, LLC, and Sonata Investment Company, Ltd., along with Appellee Patriot are represented by one law firm and will sometimes be referred to collectively as "Patriot" as each argument warrants.

via arbitration, the quiet title claim must be stayed in the trial court. Accordingly, the judgment of the trial court is affirmed in part, reversed in part and remanded.

## Facts and Procedural History

{¶4} On October 14, 2008, the Riggses executed an oil and gas lease in favor or Patriot. The Oyers executed a similar lease in favor of Patriot on November 6, 2008. The main distinctions between the Riggses' and the Oyers' lease agreements are that the Oyers' lease includes a higher delay rental provision that was negotiated by the Oyers, and the assignment clauses in the two leases are different. There is no dispute that the Riggses and the Oyers signed the lease agreements.

{¶5} Both leases contain an identical, broadly-worded arbitration clause that provides:

> **NOTICES AND ARBITRATION** * * * Any controversy arising out of or relating to this agreement shall be settled by arbitration. Either party may initiate any arbitration proceeding by notifying the other party in writing, but only after the aforementioned notice of breach has been served and the time period for cure provided for in this lease has expired. The procedure to be followed in the event of any arbitration shall be that prescribed in the Rules of the American Arbitration Association. Judgment upon the award rendered by the arbitrators may be entered in any Court having jurisdiction thereof.

{¶6} Andrew Blocksom is the president of Patriot and Thomas Blocksom had an interest in an entity which had a membership interest in Patriot. Both Andrew and Thomas played a role in the signing of the lease agreements with the Property Owners.

{¶7} After the lease agreements were signed by the Property Owners, certain rights under those leases, including overriding royalty interests and shallow rights interests were assigned to various entities including Bass Energy, LMF Holdings,

Buckeye Oil, Wimsatt and Sonata. Patriot assigned to Chesapeake the deep rights under the leases. The Riggses objected to the assignments via a letter to Patriot.

{¶8} On September 16, 2011, the Riggses filed a Complaint against Appellees, which they later amended on October 25, 2011 to include the Oyers as plaintiffs. Without precisely distinguishing between the various Appellees for their alleged liability, the Amended Complaint asserts individual and class action claims against all 10 named Appellees for rescission of the oil and gas leases; damages for "notary fraud" related to the leases; "land fraud" relating to the leases; disgorgement of profits; civil conspiracy; unjust enrichment; quiet title/declaratory judgment; slander of title; rescission and nullification of the assignments and overriding royalty interests related to the leases; and fraudulent concealment and disgorgement of profits "promoted by speculators" related to the leases.

{¶9} Chesapeake filed a motion to stay the proceedings pending arbitration on October 14, 2011, which the Property Owners opposed, and on November 18, 2011, a hearing was held on the motion. Andrew testified about the business relationships between the Appellees, and the lease assignments. The Property Owners' counsel elicited extensive testimony from Andrew and from Patriot's bookkeeper, Elizabeth Eshenbaugh, in an attempt to demonstrate that the leases had expired. The trial court opined that this testimony actually went to the merits of the claims, and was beyond the scope of the motion to stay, but permitted it insofar as the Property Owners asserted that the validity of the overall contracts affected the validity of the arbitration clauses. Brenda and William Riggs and Roger Oyer testified generally about their work and educational background and the circumstances surrounding the execution of the leases. Thomas testified that he notarized both leases. Several exhibits were admitted into evidence, including the leases and the assignments. The American Arbitration Association (AAA) Rules were not admitted as an exhibit, nor did the trial court take judicial notice of them.

{¶10} Following the hearing, on December 1, 2011, the trial court issued a detailed opinion and order granting the motion to stay pending arbitration. The trial

court found that "the evidence does not support a contention that the arbitration agreement was substantively or procedurally unconscionable, so it is enforceable like any other contract." The trial court further found that R.C. 2711.01(B)(1) did not bar arbitration of the Property Owners' claims. The trial court rejected the Property Owners' argument that Patriot's failure to comply with certain lease provisions rendered the arbitration clause unenforceable.

### Arbitration, Jurisdiction and Standard of Review

{¶11} Ohio's Arbitration Act has been codified in Revised Code Chapter 2711 and arbitration is encouraged as a method of settling disputes. See *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998). "Arbitration agreements are 'valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.' " *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶33 (quoting R.C. 2711.01(A)). "A presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision. An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." *Id*. at 471.

{¶12} Pertinent to this appeal, if an action has been filed by one of the parties to an arbitration agreement raising issues which may be arbitrable pursuant to their written agreement, the other party may move the trial court for a stay of those proceedings "until the arbitration of the issue has been had in accordance with the agreement[.]" R.C. 2711.02(B). An order that grants or denies the stay of trial proceedings pending arbitration is a final appealable order. *Taylor Bldg. Corp. of Am.* at ¶31, citing R.C. 2711.02(C). Regarding the standard of review, a court of appeals generally applies an abuse of discretion standard to a trial court's decision regarding a stay pending arbitration. *Reynolds v. Crockett Homes, Inc.*, 7th Dist. No. 08 CO 8, 2009-Ohio-1020, ¶11.

{¶13} However, there are some exceptions to this rule for when the error

alleged is solely a matter of law which apply to two assignments of error raised in this appeal. *See Kent Partners v. Crossings at Golden Pond-Portage Cty., L.L.C.,* 11th Dist. No. 2010-P-0028, 2011-Ohio-2842, ¶22. Assignment of error two alleges that the Property Owners' claims are exempt from arbitration pursuant to R.C. 2711.01(B)(1). Courts have held that this constitutes a legal error to be reviewed de novo. *Kent Partners* at ¶20-21; *see also Blanchard Valley Health Sys. v. Canterbury Holdings, Inc.,* 3d Dist. No. 5-12-08, 2012-Ohio-5134, ¶12-13. Further, the Property Owner's claim in the seventh assignment of error, that because the arbitration clause is unconscionable the agreement is unenforceable, is subject to de novo review. *Taylor Bldg. Corp. of Am.* at ¶2. However, any factual findings made by the trial court in support of its unconscionability determination, particularly those involving credibility determinations, should be afforded appropriate deference. *Id.* at ¶38.

## Arbitrability of Claims

{¶14} The Property Owners assert in their second of eight assignments of error, discussed out of order or together for clarity of analysis:

{¶15} "The court erred by ordering arbitration when Oil and Gas Agreements are not covered by an exception to the statute which keeps disputes about possession of land and title to land away from arbitration. Sections 2711.01 to 2711.16."

{¶16} The Property Owners contend their claims are not arbitrable under Ohio law because they involve title to or the possession of real estate. R.C. 2711.01(B)(1) creates an exemption to the general rule concerning enforceability of arbitration clauses in Ohio. It provides that arbitration clauses in contracts "do not apply to controversies involving the title to or the possession of real estate." *Id.* However the statute contains exceptions to the general exemption:

(a) Controversies involving the amount of increased or decreased valuation of the property at the termination of certain periods, as provided in a lease;

(b) Controversies involving the amount of rentals due under any lease;

(c) Controversies involving the determination of the value of improvements at the termination of any lease;

(d) Controversies involving the appraisal of property values in connection with making or renewing any lease;

(e) Controversies involving the boundaries of real estate.

R.C. 2711.01(B)(1)(a)-(e)

{¶17} The Property Owners argue their claims do not fall under any of the listed exceptions; focusing mainly on the fact that the words "land" and "title" are used numerous times in the Leases to support their argument. The Property Owners advocate a very broad reading of the statute so as to exempt any claim from arbitration that has an effect on a real property interest. Conversely, Appellees argue the prohibition against arbitrating disputes involving title or possession of real property is much narrower in scope and does not encompass the Property Owners' claims.

{¶18} Generally, R.C. 2711.01(B)(1) should be "narrowly construed * * * to apply only where the arbitration agreement directly submits the ultimate question of title to or possession of the real estate" to arbitration. *Newark Trust Co. v. Abbott Laboratories*, 5th Dist. No. CA-2821, 1982 WL 3020, *6 (June 11, 1982).

{¶19} Matters held to be exempt from arbitration include a claim for specific performance of a real estate purchase agreement; *Kedzior v. CDC Dev. Corp.*, 123 Ohio App.3d 301, 303, 704 N.E.2d 54 (8th Dist.1997)*; see also Kent Partners v. Crossings at Golden Pond-Portage Cty., L..L.C.*, 11th Dist. No. 2010-P-0028, 2011-Ohio-2842, ¶36; as well as claims for foreclosure. *See U.S. Bank v. Wilkens*, 8th Dist. No. 93088, 2010-Ohio-262, ¶10. Finally, a trial court's order appointing a receiver with authority to take immediate possession of all real property of a business entity is not arbitrable under Ohio law because the statutory powers of a receiver include taking and keeping possession of real property. *In re Estate of Philips v. Daoud*, 2d Dist. No. 15816, 1996 WL 354754 (June 28, 1996), *7.

{¶20} However, every controversy concerning real property does not

necessarily involve title to or possession of real estate. Where the "subject matter of the case is breach of the contract to purchase real estate and only money damages are sought by appellee, * * * title to the property and possession of the property is not in dispute," and therefore arbitration is not precluded by R.C. 2711.01(B)(1). *Mears Harding L.L.C. v. Ferri*, 5th Dist. No. 2011CA00253, 2012-Ohio-2878, ¶25.

{¶21} In *Blanchard Valley Health Sys. v. Canterbury Holdings, Inc.*, 3d Dist. No. 5-12-08, 2012-Ohio-5134, ¶21, a condominium association and Blanchard Valley, a unit owner, alleged that Canterbury, another unit owner, violated restrictive covenants applicable to the medical condominium property by contracting with Blanchard Valley's known competitor to provide laboratory services. The Third District held that the claim did not involve title to or possession of real estate so as to fall within the R.C. 2711.01(B)(1) exemption; reasoning that "neither party disputes that Canterbury holds title to its condominium unit, and neither party has initiated an action to quiet title. The controversy here revolves around the use of the property, rather than title or possession." *Blanchard Valley Health* at ¶18. Similarly in *Murtha v. Ravines of McNaughton Condominium Assn.*, 10th Dist. No. 09AP-709, 2010-Ohio-1325*,* the Tenth District held that a dispute over the restrictions in the condominium's declaration documents prohibiting an owner from renting his unit was essentially a dispute involving contract interpretation, not a dispute over who was entitled to possess the property or who holds title. *Id.* at ¶13.

{¶22} The bulk of the Property Owners' claims concern the formation of the parties' agreements, that is, whether their contracts were properly executed or were procured by fraud. Specifically, the Property Owners assert claims for rescission of the oil and gas leases; damages for "notary fraud" related to the leases; "land fraud" relating to the leases; disgorgement of profits; slander of title; civil conspiracy; unjust enrichment, rescission and nullification of the assignments and overriding royalty interests related to the leases; and fraudulent concealment and disgorgement of profits "promoted by speculators" related to the leases. These are all arbitrable claims under Ohio law as they do not directly submit the ultimate question of title to or

possession of the real estate to arbitration, consistent with *Mears, Blanchard Valley* and *Murtha*.

**{¶23}** But the Property Owners' have also brought a quiet title claim which is exempt from arbitration pursuant to R.C. 2711.01(B)(1). Quiet title actions are governed by R.C. 5303.01, which provides, inter alia:

> An action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest. Such action may be brought also by a person out of possession, having, or claiming to have, an interest in remainder or reversion in real property, against any person who claims to have an interest therein, adverse to him, for the purpose of determining the interests of the parties therein.

**{¶24}** In *Papps v. Papps*, 6th Dist. No. L-09-1260, 2010-Ohio-5028, a case involving the trial court's confirmation of an arbitration award, the Sixth District held that quiet title claims fell within the sole purview of the trial court and were exempt from arbitration pursuant to R.C. 2711.01(B)(1) since they were controversies involving title to or possession of real estate. *Id.* at ¶9. And as discussed above, one reason the court in *Blanchard Valley Health* concluded the claims were not exempt from arbitration was because "neither party [had] initiated an action to quiet title." *Blanchard Valley Health* at ¶18.

**{¶25}** While Appellees do not address the quiet title claim specifically, Patriot asserts that oil and gas leases are purely contractual rights concerning personal property. However, we need not reach this issue in the narrow context presented by this case. R.C. 2711.01 exempts controversies involving title to or possession of real estate from going to arbitration, with certain exceptions that do not apply here. The purpose of a quiet title action is to resolve or remove any clouds on the title to real property. There is no need to predetermine the nature of the cloud to reach the

conclusion that a quiet title action in this case will involve matters relating to the title to or possession of real estate, and is thus exempt from arbitration. Thus, the trial court erred by permitting the quiet title claim to go to arbitration since it is a controversy directly involving title to real estate and therefore exempt from arbitration pursuant to R.C. 2711.01(B)(1).

{¶26} However, in cases where some claims are exempt from arbitration and others are not, courts may properly require arbitration of those claims that do not purely involve the ultimate question of title*. U.S. Bank, supra,* ¶20-22. Any claims that are exempt from arbitration must still be stayed in the trial court until the claims subject to arbitration are resolved. *Cheney v. Sears, Roebuck & Co.,* 10th Dist. No. 04AP-1354, 2005-Ohio-3283, ¶12.

{¶27} Accordingly, the Property Owners' second assignment of error is meritorious in part; the trial court should have stayed the quiet title claim pending arbitration of the remaining claims, which it properly referred to arbitration for resolution.

### Validity of the Leases

{¶28} The Property Owners assert in their first and eighth assignments of error:

{¶29} "The court erred by ordering arbitration under an Oil and Gas Agreement when it had been waived by Appellee Patriot Energy Partners."

{¶30} "The delay rental has not been paid in advance by the Lease signing anniversary date."

{¶31} The Property Owners argue that the arbitration provision should not be enforced because certain conditions precedent contained in the lease have not occurred; specifically, that Patriot failed to verify that no prior oil and gas leases existed on the subject property, failed to pay the initial $1.00 payment and failed to timely pay delay rentals. Appellees counter that in light of the broad arbitration clause in this case, those issues themselves are subject to arbitration.

{¶32} " '[A]n arbitration clause is, in effect, a contract within a contract, subject to revocation on its own merits. * * * Because the arbitration clause is a separate

entity, it only follows that an alleged failure of the contract in which it is contained does not affect the provision itself.' " *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 884 N.E.2d 12, ¶41, quoting *ABM Farms Inc. v. Woods*, 81 Ohio St.3d 498, 501-502, 692 N.E.2d 574.

**{¶33}** Thus, "an alleged failure of the overall contract does not necessarily invalidate the arbitration clause," and a general challenge to the entire contract must be submitted to the arbitrator to determine the contract's validity. *Garber v. Buckeye Chrysler-Jeep-Dodge of Shelby*, 5th Dist. No. 2007-CA-0121, 2008-Ohio-3533, ¶16, citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-446, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (holding that regardless of whether the challenge is brought in federal or state court, a challenge to the validity to the contract as a whole, not specifically to the arbitration clause, must be submitted to the arbitrator in the first instance.) *See also Mingo Junction Safety Forces Assoc. Local 1 v. Chappano*, 7th Dist. No. 10 JE 20, 2011-Ohio-3401, ¶53-54 (holding that the trial court properly ordered the parties submit to the grievance and arbitration procedures in the collective bargaining agreement notwithstanding appellants' assertion that the contract had expired.)

**{¶34}** The Property Owners' arguments concerning the overall validity of the lease due to purported unmet conditions precedent are irrelevant to the issue of whether the arbitration clause is enforceable. Rather, these are issues to be resolved via arbitration. Accordingly, the Property Owners' first and eighth assignments of error are meritless.

### Effect of the Assignments

**{¶35}** The Property Owners assert in their third, fourth, fifth and sixth assignments of error:

**{¶36}** "The court erred by ordering arbitration when Plaintiffs/the Property Owners William E. Riggs and Brenda Riggs refused to assign the Oil and Gas Lease to Chesapeake Exploration LLC or any other Chesapeake entity."

**{¶37}** "The court erred by ordering arbitration when Plaintiffs/the Property

Owners William E. Riggs and Brenda Riggs were never asked and have never agreed to assign the Oil and Gas Lease to Buckeye Oil Producing Co., which was granted a Shallow Rights Assignment to drill, which is not a working interest or overriding royalty interest."

{¶38} "The court erred by ordering arbitration when Plaintiffs/the Property Owners were never asked and have never agreed to assign the Oil and Gas Lease to Defendant Bass Energy, Inc., which was granted a Shallow Rights Assignment to drill, which is not a working interest or overriding royalty interest."

{¶39} "The court erred by ordering arbitration when Plaintiffs/the Property Owners have no contract with Defendant Buckeye Oil Producing Co., Defendant Bass Energy, Inc., Defendant Wimsatt Family LLC, nor Defendant Sonata Investment Company, Ltd. which includes an arbitration clause."

{¶40} Any issues relating to the validity of the assignments, including whether the Property Owners' unreasonably withheld their consent to the assignments, like the Property Owners' claims of unperformed conditions precedent, as discussed above, are matters for arbitration since the arbitration clause is very broad & includes "any controversy arising out of or relating to this agreement."

{¶41} Further, the Property Owners' argument that Chesapeake and the other oil and gas companies have no right to compel arbitration since they were not parties to the original lease agreements is meritless. Both leases contain the following under the heading "MISCELLANEOUS PROVISIONS": "All covenants and conditions between the parties hereto shall extend to their heirs, personal representatives, successors and assigns * * *[.]" Moreover, non-signatories to an arbitration agreement can compel arbitration against a signatory pursuant to an "alternative estoppel theory." *See Short v. Resource Title Agency*, 8th Dist. No. 95839, 2011-Ohio-1577, ¶14-15. *See also Trinity Health Sys. v. MDX, Corp.*, 180 Ohio App.3d 815, 2009-Ohio-417, 907 N.E.2d 746, ¶22 (7th Dist.) ("A nonsignatory to an arbitration agreement may be bound by the arbitration agreement under a variety of ordinary contractual and agency related legal theories, including but not limited to estoppel, incorporation by reference,

assumption, agency, veil-piercing/alter ego, and third-party beneficiary.")

**{¶42}** As explained by the Eighth District in *U.S. Bank N.A. v. Wilkens*, 8th Dist. No. 96617, 2012-Ohio-1038, ¶54:

> A signatory to an arbitration agreement cannot avoid arbitration with a nonsignatory " 'when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement' " that the signatory signed. *I Sports [v. IMG Worldwide, Inc.],* 157 Ohio App.3d 593 [813 N.E.2d 4, 2004-Ohio-3113, at ¶ 24 [(8th Dist.)], 813 N.E.2d 4, quoting *Thomson–CSF, S.A. v. Am. Arbitration Assn.*, 64 F.3d 773 (2d Circ.1995). The signatory will be estopped from attempting to avoid arbitration because their claims against the nonsignatory "are integrally related to the contract containing the arbitration clause." *Id.* at ¶ 24-25.

**{¶43}** The claims against Chesapeake and the other oil and gas companies are certainly intertwined with the leases containing the arbitration clause. Thus, the Property Owners are estopped from attempting to avoid arbitration with these Appellees. Accordingly, the Property Owners' third, fourth, fifth and sixth assignments of error are meritless.

<b>Unconscionability</b>

**{¶44}** The Property Owners assert in their seventh and final assignment of error:

**{¶45}** "The Arbitration Clause is both substantively and procedurally unconscionable."

**{¶46}** It is settled law in Ohio that generally: "In order to determine whether a contract provision is unconscionable, courts must examine the facts and circumstances surrounding the agreement." *Peltz v. Moyer*, 7th Dist. No. 06 BE 11, 2007-Ohio-4998, ¶43. There are two facets to unconscionability: procedural and substantive. Both prongs must be met for a contract provision to be found unenforceable due to unconscionability; with the focus on whether the arbitration

provision itself is unconscionable, as opposed to the overall contract itself. *Taylor Bldg. Corp. of Am.*, 117 Ohio St.3d 352, at ¶42. However, there is a dearth of case law specifically addressing the enforceability of arbitration clauses in oil and gas leases.

*Substantive Unconscionability*

**{¶47}** Whether a contract provision is substantively unconscionable requires an analysis of the terms of the provision itself and whether those terms are commercially reasonable. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶33. No bright-line set of factors for determining substantive unconscionability has been adopted by the Ohio Supreme Court. *Id.* "The factors to be considered vary with the content of the agreement or provision at issue." *Id.*

**{¶48}** When reviewing arbitration provisions for substantive unconscionability, courts have considered factors such as the cost of arbitration; the specificity of the provision, e.g., whether the rules governing arbitration and any required fees are disclosed; the relative prominence of the provision, e.g., whether the arbitration clause is set forth in fine print buried within a larger contract or is contained in a separate document; and whether the obligation to arbitrate applies equally to all parties. *See, e.g., Taylor Bldg Corp. of Am.*, ¶54-60; *Peltz,* 7th Dist. No. 06 BE 11, ¶47-48. *Robbins v. Country Club Ret. Ctr. IV, Inc.*, 7th Dist. No. 04 BE 43, 2005-Ohio-1338, ¶37; *Wascovich v. Personacare of Ohio*, 190 Ohio App.3d 619, 2010-Ohio-4563, 943 N.E.2d 1030, ¶43-54 (11th Dist.); *Eagle v. Fred Martin Motor Co.*, 57 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161 (9th Dist.); *Vanyo v. Clear Channel Worldwide,* 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482, ¶20 (8th Dist.). The party challenging the enforceability of the arbitration agreement bears the burden of presenting evidence to support that challenge. *Hayes*, 122 Ohio St.3d 63, at ¶27.

**{¶49}** The Property Owners failed to provide much, if any, evidence of substantive unconscionability. The AAA Rules were neither proffered nor admitted into evidence, nor did the trial court take judicial notice of the rules during the hearings; and thus no evidence of the costs associated with arbitration is contained in

the record. The trial court did read a brief portion of the AAA Supplementary Rules for Class Actions into the record during the hearing; specifically, Rule (1)(A), which weighs against substantive unconscionability because it demonstrates the Property Owners' class action could proceed via arbitration. Aside from this reference, the substance of the AAA Rules is not contained in the record.

{¶50} There was a similar "dearth of evidence" about the costs of alternative dispute resolution and whether those costs would have been prohibitive to the plaintiffs in *Taylor Bldg. Corp. of Am.,* where the Ohio Supreme Court held that the arbitration provision was not substantive unconscionable, the plaintiffs having failed to meet their burden of proof on this issue. *Id.* at ¶59. The Court reasoned that "[t]he lack of evidence before the trial court of excessively high arbitration costs undercuts the [plaintiffs'] claim that arbitration costs would be prohibitively expensive." *Id.* at ¶57.

{¶51} The leases are part of the record, and on their face do not demonstrate substantive unconscionability. The obligation to arbitrate clearly applies to both parties, not just the lessors. *See, e.g., Vanyo v. Clear Channel Worldwide,* 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482, ¶20 (8th Dist.). The clause specifically informs the parties about the procedures under which the arbitration will proceed: "[t]he procedure to be followed in the event of any arbitration shall be that prescribed in the Rules of the American Arbitration Association." *See Peltz* at ¶48. Nor is an arbitration clause substantively unconsicionable because the word "binding" was not used, s*ee generally Schaefer v. Allstate Ins. Co.,* 63 Ohio St.3d 708, 711, 590 N.E.2d 1242 (1992), or because the clause requires the parties to waive their right to a jury trial, and does not warn them of this fact. *Taylor Bldg. Corp. of Am.*, 117 Ohio St.3d 352 at ¶55. Finally, the text of the arbitration clause was set forth in the same sized text as every other clause in the contract, not in "fine print," which would weigh somewhat against substantive unconscionability as well. *See, e.g., Moran v. Riverfront Diversified, Inc.*, 2d Dist. No. 24545, 2011-Ohio-6328, ¶25.

{¶52} Accordingly, the Property Owners have not proven that the arbitration clause is substantively unconscionable; in other words, they failed to produce

evidence that the clause is commercially unreasonable.

*Procedural Unconscionability*

{¶53} "Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible." *Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 2006-Ohio-4464, 861 N.E.2d 553, ¶7 (9th Dist.), quoting *Porpora v. Gatliff Building Co.*, 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, ¶7 (9th Dist.). Thus, courts must consider the circumstances surrounding the parties' bargaining. *Taylor Bldg. Corp. of Am.*, 117 Ohio St.3d 352 at ¶44. Such circumstances include the parties' respective ages, educational backgrounds, intelligence, business acumen and experiences, along with who drafted the contract, whether alterations in the printed terms were possible and whether there were alternative sources of supply for the subject goods or services. *Id*.

{¶54} In addition, other factors that may contribute to a finding of procedural unconscionability include:

> '[a] belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors.'

*Id.* at ¶44, quoting Restatement of the Law 2d, Contracts (1981), Section 208, Comment d.

{¶55} In this case, the age and educational backgrounds of the Property Owners would appear to weigh in favor of procedural unconscionability. Brenda Riggs testified that she was 50 years old with a tenth grade education and no GED. She had no prior oil and gas or business experience. She was disabled from a motorcycle accident. William Riggs testified that he was 55 years old with an eighth grade

education and no GED. He characterized himself as "slow," due to a head injury as a child, and stated his reading ability was "poor." William testified he also receives SSI disability benefits stemming from injuries from a motorcycle accident in the 1980s. Roger Oyer testified that he was a high school graduate who had completed one college credit in marketing.

{¶56} There is also some evidence of unequal bargaining power. Patriot's representatives certainly had more experience with oil and gas leases than the Property Owners. However, "[m]ere inequality of bargaining power is insufficient to invalidate an otherwise enforceable arbitration agreement." *Vanyo v. Clear Channel Worldwide*, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482, ¶19, citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). These factors weigh in favor of procedural unconscionability.

{¶57} But the following factors weigh against procedural unconscionability. Importantly, there is no evidence of duress or coercion by the Patriot representatives. None of the Property Owners testified that they felt pressured into signing the leases. To the contrary, the Property Owners were provided copies of the leases to review before signing. Brenda testified she had between 2 weeks and one month to review the lease before signing. It is unclear from the record how long the Oyers had to review the lease, however, Roger testified that Patriot representatives visited his home several times before he and his wife ultimately signed the lease.

{¶58} Despite having ample time to review the lease, William testified he only read some parts of it and Roger testified that he only scanned it. A party's decision "not to read the agreement does not relieve [that party] of [the] obligations incurred by * * * signing." *Robbins*, 7th Dist. No. 04 BE 43, ¶34. It is a fundamental legal principle that one may not "enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written." *McAdams v. McAdams*, 80 Ohio St. 232, 240-241, 88 N.E. 542 (1909), quoting *Upton v. Tribilcock*, 91 U.S. 45, 50, 23 L.Ed. 203 (1875). In other

words, "[t]he legal and common-sensical axiom that one must read what one signs survives[.]" *ABM Farms*, 81 Ohio St.3d at 503.

**{¶59}** The Riggses testified that they did not understand the arbitration provision. However, Brenda testified: that she did consult with an advisor of some sort before writing a letter to Patriot objecting to the assignment to Chesapeake, which included legal terms such as "unconscionable" and "ratify;" that she had help from "friends" in drafting that letter; that she was close friends with a local judge; and that she could have asked her friends or advisors for advice before initially signing the lease, but did not. Roger testified that he also did not understand the arbitration provision, but conceded he did have the opportunity to ask questions about the lease to Andrew before signing, and that he and Andrew discussed some of the other lease terms.

**{¶60}** Also weighing against procedural unconscionability, the Property Owners were given the opportunity to negotiate the lease terms. In fact, Roger testified that he negotiated for a higher delay rental. Thus, the subject leases, though they stemmed from a form contract, cannot truly be deemed contracts of adhesion. A contract of adhesion is "a standardized form contract prepared by one party, and offered to the weaker party, usually a consumer, who has *no realistic choice* as to the contract term." *Taylor Bldg. Corp. of Am.* 117 Ohio St.3d 352, at ¶49, citing Black's Law Dictionary (8th Ed.2004) 342 (emphasis added.)

**{¶61}** Thus, overall the evidence weighs against procedural unconscionability. This is not a situation where "no voluntary meeting of the minds is possible." *Porpora* at ¶7. Moreover, as discussed, the Property Owners have failed to meet their burden of proof regarding substantive unconscionability. Since both facets of unconscionability, procedural and substantive, are required to invalidate the arbitration clause, the failure to establish either is fatal to this claim. Accordingly, the Property Owners' seventh assignment of error is meritless.

## Conclusion

**{¶62}** In sum, the Property Owners' assignments of error are meritless, with

the exception of the second assignment of error, in part. The Property Owners have not proven both substantive and procedural unconscionability; thus the arbitration clause is valid and enforceable. Any issues concerning the validity of the leases or the assignments are to be resolved via arbitration; those issues have no bearing on the enforceability of the arbitration clause. Moreover, the oil and gas assignees to the leases had the right to seek arbitration, despite the fact that they were non-signatories to the original lease agreements.

{¶63} Finally, although most of the Property Owners' claims are subject to arbitration pursuant to R.C. 2711.01, the trial court erred by submitting the quiet title claim to arbitration because it is a controversy involving title to or possession of real estate and does not fall under any of the listed exceptions in R.C. 2711.01(B)(1). In cases where some claims are exempt from arbitration and others are not, trial courts properly stay claims exempt from arbitration until the claims subject to arbitration are resolved. In this case, the trial court properly required arbitration of those claims that do not purely involve the ultimate question of title; thus, until those claims are resolved via arbitration, the quiet title claim must be stayed in the trial court. Accordingly, the judgment of the trial court is affirmed in part, reversed in part and remanded.

Vukovich, J., concurs.

Waite, J., concurs.