[Cite as *Cook v. Richard T. Kiko Agency, Inc.*, 2023-Ohio-552.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

THOMAS COOK,

Plaintiff-Appellant,

v.

RICHARD T. KIKO AGENCY, INC. et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MA 0024**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2022 CV 00002

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Michael B. Pasternak,* The Law Office of Michael Pasternak, 3681 South Green Road, Suite 411, Beachwood, Ohio 44122 and *Atty. Jeffrey Saks,* The Saks Law Office, LLC*,* 3681 South Green Road, Suite 411, Beachwood, Ohio 44122 for Plaintiff-Appellant and

*Atty. Michael S. Gruber*, *Atty. Jason N. Bing,* Gruber, Haren, Thomas & Co., 6370 Mt. Pleasant Street, N.W*.,* North Canton, Ohio 44720, for Defendants-Appellees Richard T. Kiko Agency, Inc. and

*Atty. Elizabeth H. Farbman*, Roth, Blair, Roberts, Strasfeld & Lodge, 100 East Federal Street, Suite 600, Youngstown, Ohio 44503 for Defendants-Appellees DM Bieber Development, Ltd et al.

Dated:  February 21, 2023

---

**Robb, J.**

**{¶1}**   Plaintiff-Appellant Thomas Cook appeals the decision of the Mahoning County Common Pleas Court granting a stay pending arbitration as requested by Defendants-Appellees Richard T. Kiko Agency, Inc. ("Appellee Kiko").   Appellant contends the case falls under the statutory exception to arbitration in R.C. 2711.01(B)(1), which applies to "controversies involving title to or possession of real estate." Alternatively, Appellant alleges the arbitration clause is unconscionable and thus unenforceable.  For the following reasons, the trial court's judgment is affirmed.

<u>STATEMENT OF THE CASE</u>

**{¶2}**   On December 30, 2021, Appellant filed a complaint with the following four counts:  declaratory judgment, rescission of contract, fraud, and conversion.  In addition to naming Appellee Kiko as a defendant, Appellant also sued DM Bieber Development, Ltd., Estate of Mary Ann Bieber, Mary Ann Bieber Family Trust, and William A. Bieber (collectively called "the Bieber Appellees").   Appellant claims material false representations induced him to sign two purchase agreements on November 2, 2021 after an auction.

**{¶3}**   Under the first agreement, Appellant agreed to purchase 1750 and 1770 W. Western Reserve Road in Mahoning County for $973,500.  Under the second agreement, Appellant agreed to purchase nearly 13 acres on Kauffman Road in Columbiana County for $522,500.  Appellant put down a 10% deposit, which totaled $149,600.  The purchase agreement provided for forfeiture of the deposit if the buyer failed to perform.  Appellee Kiko was to hold it in escrow (pending delivery of the deed, agreement, or court order).

<u>Case No. 22 MA 0024</u>

**{¶4}** According to the complaint, Appellant asked Appellees about the zoning applicable to the Western Reserve Road properties because he intended to operate a commercial business and the neighboring lots appeared residential. He alleged Appellees informed him the properties were zoned commercial while acknowledging they also said the properties would be "grandfathered" for continued commercial use.

**{¶5}** Appellant's complaint said he subsequently learned the properties "would not continue to be zoned commercial after they were sold by [Appellees]." He asserted he would not have entered into either agreement if he knew the parcels in the first agreement could not be used for commercial purposes, as he intended to operate a business at that location, with the property in the second agreement to be used in conjunction with this intended commercial enterprise. Appellant refused to proceed with the purchase and sued after Appellees failed to return his down payment.

**{¶6}** Appellee Kiko filed a motion to stay pending arbitration, pointing to the arbitration clause in the purchase agreement, which required binding arbitration for any disputes concerning the contract or the performance of the owners or the realtor related to or arising out of the contract. The Bieber Appellees also filed a motion to stay pending arbitration. Appellant filed a memorandum in opposition to each motion. He claimed the statutory real estate exception to arbitration applied and the arbitration clause was unconscionable. Replies and sur-replies were filed.

**{¶7}** On March 4, 2022, the trial court granted a stay pending arbitration, which is a final appealable order. *See* R.C. 2711.02(C) (grant or denial of stay pending arbitration is a final appealable order). Appellant filed a timely notice of appeal.

ASSIGNMENT OF ERROR

**{¶8}** Appellant's general assignment of error contends:

"The trial court erred in granting defendants' motions to stay the case pending arbitration."

**{¶9}** An arbitration clause is considered "a contract within a contract, subject to revocation on its own merits" so that "an alleged failure of the contract in which it is contained does not affect the provision itself." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 41, quoting *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 501-501, 692 N.E.2d 574 (1998). In general, there is a presumption

in favor of arbitration when a claim is within the scope of the arbitration provision. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998). "[W]ith limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." *Id.*

**{¶10}** In the motions before the trial court, the parties did not dispute an issue in the action was referable to arbitration *under the written arbitration agreement* and the applicant for a stay was not in default in proceeding to arbitration for purposes of the following mandatory provision:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

R.C. 2711.02(B).

**{¶11}** In the issues presented for review section, Appellant's brief separately alleges two specific errors corresponding to the two arguments presented to the trial court: (1) failure to apply the real estate exception to mandatory arbitration and (2) failure to find the arbitration clause unconscionable. The following statutory provision underlies both arguments:

> A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.

R.C. 2711.01(A).

**{¶12}** The first "except" phrase in this provision points to division (B), which states: "Sections 2711.01 to 2711.16 of the Revised Code do not apply to controversies involving the title to or the possession of real estate * * *." R.C. 2711.01(B)(1) (with the exceptions to this exception involving leases or boundaries). The concluding "except" phrase in R.C.

2711.01(A), referring to the general grounds for revocation, is the underlying premise behind the argument about an unconscionable arbitration clause. *See Taylor Bldg. Corp.*, 117 Ohio St.3d 352 at ¶ 33.

{¶13} As the parties point out, the Supreme Court applied a de novo standard of review when applying the arbitration statute's real estate exception, finding the statute unambiguous and its application a question of law. *See French v. Ascent Resources-Utica, L.L.C.*, 167 Ohio St.3d 398, 2022-Ohio-869, 193 N.E.3d 543, ¶ 11 (a controversy asking whether an expired oil and gas lease fell under the exception). Likewise, the Court applied a de novo standard of review to a decision on whether an arbitration clause was unconscionable. *Taylor Bldg. Corp.,* 117 Ohio St.3d 352 at ¶ 2. Still, "any factual findings of the trial court must be accorded appropriate deference." *Id.*

REAL ESTATE EXCEPTION

{¶14} Appellant's first issue presented for review states:

"The trial court erred in granting defendants' motions to stay the case pending arbitration because the case involves a controversy involving the title to or possession of real estate and thus was exempt from arbitration pursuant to [R.C.] 2711.01(B)(1)."

{¶15} Appellant emphasizes the purchase agreement he sought to rescind was a contract to buy real estate, which was entered with intent to transfer "the title to or the possession of" real estate. He points out the real estate exception to arbitration applies to a claim for specific performance, citing cases where the buyer sought to compel the seller to transfer title. Pointing to his complaint's request for the purchase agreement to be rescinded and the transaction to be cancelled, he theorizes he set forth the "mirror image" of a specific performance claim. He claims title is involved because his complaint shows he wishes the property to remain with the sellers. He also speculates that if his case had proceeded past the motion for stay, then a counterclaim for specific performance would have been asserted against him to force him to pay for the property and accept title.

{¶16} In urging his claims are "controversies involving the title to or the possession of real estate" and thus exempted from arbitration by the real estate exception in R.C. 2711.01(B)(1), Appellant claims the recent *French* decision is a case on point. In an action for lease termination, the Supreme Court defined the following three words in the

real estate exception: "involving" means relating closely or connecting to; "title" means a union of elements (ownership, possession, custody), which provides the legal right to control and dispose of property; and "possession" means the exercise of dominion over property. *French*, 167 Ohio St.3d 398 ¶ 14. It was pointed out an oil and gas lease is a real property interest affecting title and possession, which can terminate by operation of law under its terms, in which event the lease would no longer encumber the land or affect title and possession. *Id.* at ¶ 15-18.

**{¶17}** The Court found the claim in the action was a controversy involving the title to or the possession of real property because:

> If the action is successful, it will quiet title to the property, remove the leases as encumbrances to the property, and restore the possession of the land to the lessors. If the action is unsuccessful, however, title to the land will remain subject to the leases, affecting the transferability of the property. Also, [the lessee] would have the continued right to possess and occupy the land, as permitted by the leases, denying [the lessor] the right to use the property without restriction.

(Citations omitted.) *Id.* at ¶ 20. Therefore, the Court concluded, "An action seeking a determination that an oil and gas lease has expired by its own terms is a controversy involving the title to or the possession of real estate and, under R.C. 2711.01(B)(1), the action is not subject to arbitration." *Id.* at ¶ 21.

**{¶18}** A quiet title claim invoking a decision on whether to eliminate or maintain a title encumbrance is distinguishable from the claims sets forth in the case at bar. Unlike the title in *French*, which was encumbered by a lease alleged to have expired under its own terms, the title of the real estate here was not encumbered by the purchase agreement. There was no delivery of an executed deed here.

**{¶19}** Where a complaint containing alleged false representations induced a party to enter a purchase agreement, this court previously concluded fraud claims seeking rescission and damages were not exempt from arbitration by the real estate exception. *See Villas Di Tuscany Condo. Assn., Inc. v. Villas Di Tuscany*, 7th Dist. Mahoning No. 12 MA 165, 2014-Ohio-776, ¶ 15-17. *See also Riggs v. Patriot Energy Partners, L.L.C.*, 7th

Dist. Carroll No. 11 CA 877, 2014-Ohio-558, ¶ 8, 22.  Appellees cite our *Riggs* case for various principles.

**{¶20}** In that case, we found the quiet title claim was exempt from arbitration due to the real estate exception but then found the claims for fraud and rescission of oil and gas leases were subject to arbitration.  *Riggs*, 7th Dist. No. 11 CA 877 at ¶ 22.  Notably, a trial court properly stays the entire action pending arbitration even if the action contains non-arbitrable controversies.  *Id.* at ¶ 26; *Villas Di Tuscany*, 7th Dist. No. 12 MA 165 at ¶ 20; *Morris v. Morris*, 189 Ohio App.3d 608, 2012-Ohio-4750, 939 N.E.2d 928, ¶ 14 (10th Dist.); R.C. 2711.02(B) ("stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement").

**{¶21}** Appellant suggests *French* negatively affected *Riggs*.  However, the particular holding in *French* (the alleged automatic expiration of an oil and gas lease involves title to and possession of real estate) and its effect on one particular holding in *Riggs* (about rescission of a recorded oil and gas lease) is not before this court.  Again, as Appellant never completed the contract by paying the purchase price, an executed deed was not delivered to him.  Our situation is distinct from cases where a buyer sought rescission of an agreement after title had been transferred or encumbered.

**{¶22}** In other cases relied on by Appellant, the court found the real estate exception to arbitration in R.C. 2711.01(B)(1) applied to a buyer's claim for specific performance to compel a seller to provide title under the purchase agreement.  *See Kent Partners v. Crossings at Golden Pond-Portage Cty., L.L.C.*, 11th Dist. Portage No. 2010-P-0028, 2011-Ohio-2842, ¶ 34; *Kedzior v. CDC Dev. Corp.*, 123 Ohio App.3d 301, 303, 704 N.E.2d 54 (1997) (8th Dist.).  Appellant acknowledges his complaint did not seek specific performance to compel the transfer of title to him as the buyer.  He did not tender any money after the 10% deposit, was not entitled to a deed, and did not want the property.

**{¶23}** Instead, he sought rescission of an uncompleted contract in order to recover his down payment and damages, alleging false representations.  Appellant's request does not involve title to or possession of real estate, as he does not request the recognition of his rights in the realty or seek to encumber the seller's rights in the realty.  In such situations, a party who backs out of a purchase agreement after paying only the down

payment cannot turn their fraud and rescission claims into "controversies involving title to or possession of real estate" by merely noting a completed contract would have transferred title and/or possession. In short, title *remained* with the sellers, and Appellant was not seeking to change that situation.

**{¶24}** Moreover, Appellant cannot force the exception to apply by speculating on counterclaims. There was no counterclaim for specific performance set forth; the motion for stay was filed before Appellees' answer date.[1] Appellant speculates they may ask the arbitrator to force him to pay the remainder of the purchase price and accept title. Appellees could submit to arbitration any counterclaim for breach and seek forfeiture of the down payment or damages for a loss after a future sale of the property.[2] However, specific performance would not be available to Appellees at arbitration due to the statutory real estate exception. *See Villas Di Tuscany*, 7th Dist. No. 12 MA 165 at ¶ 20 (observing the arbitrator would not rule on non-arbitrable issues such as any request to transfer title to property but would refer the matter back to the trial court if an issue was raised as to a remedy involving title); *Kent Partners*, 11th Dist. No. 2010-P-0028 at ¶ 34; *Kedzior*, 123 Ohio App.3d at 303. It is not as if the trial court ordered the issue of specific performance to be arbitrated.[3]

**{¶25}** In sum, the real estate exception in the statute specifically requires the controversy to "involv[e] the title to or the possession of real estate" in order to be exempted from arbitration. R.C. 2711.01(B)(1). It does not generally say it applies to controversies involving real estate. A controversy does not involve title to or possession

---

[1] "[A] defendant is not required to engage in further litigation by filing a responsive pleading before the court may entertain a R.C. 2711.02 motion and stay the action." *Albrechta & Coble v. Baumgartner*, 6th Dist. Sandusky No. S-02-015, 2002-Ohio-6351, ¶ 8, citing *McGuffey v. LensCrafters, Inc.*, 141 Ohio App.3d 44, 51, 749 N.E.2d 825 (12th Dist.) (a movant "should not be penalized for promptly and appropriately asserting its right to arbitration").

[2] Appellees say the property has since been sold to a third party, making moot any speculation they may file a counterclaim for specific performance after the case is submitted to arbitration. "An event that causes a case to become moot may be proved by extrinsic evidence outside the record." *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 8. Still, the doctrine is not satisfied where an appellee "offer[s] no proof [of the subsequent event] aside from the bare unverified assertions in their appellate brief" and there is no acknowledgement of the post-judgment facts by an appellant. *Id.* at ¶ 9.

[3] Appellee Kiko states the Appellant's argument is even weaker when applied to a realtor, who did not have title to keep or transfer.

of real estate merely because it involves a real estate purchase agreement. *See Riggs,* 7th Dist. No. 11 CA 877 at ¶ 20. *See also Blanchard Valley Health Sys. v. Canterbury Holdings, Inc.*, 3d Dist. Hancock No. 5-12-08, 2012-Ohio-5134, ¶ 20 (pointing out that every controversy concerning real property does not necessarily involve "title to or possession of real estate" in a case of restrictive covenants); *Mears Harding L.L.C. v. Ferri*, 5th Dist. Stark No. 2011CA00253, 2012-Ohio-2878, ¶ 25 (an alternative holding, after stating appellant should have appealed from the stay rather than the confirmation). Where money damages are sought without title changes, title to the property is not in dispute. *See id.*

**{¶26}** Appellant's claims requesting return of the down payment, damages, and rescission of a purchase agreement due to allegations of fraud in the inducement of the agreement are not exempt from arbitration under R.C. 2711.01(B)(1), as they do not set forth a controversy involving title to or possession of real estate. This assignment of error is overruled.

UNCONSCIONABILITY

**{¶27}** Appellant's second issue presented for review states:

"The trial court erred in granting defendants' motions to stay the case pending arbitration because the arbitration provision is unconscionable and therefore unenforceable."

**{¶28}** As outlined supra, an arbitration agreement may be unenforceable based "upon grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A). One of these equitable grounds is unconscionability. *Taylor Bldg. Corp.*, 117 Ohio St.3d 352 at ¶ 33. "[T]he party must show that the arbitration clause itself is unconscionable. If the court determines that the arbitration clause is enforceable, claims of unconscionability that relate to the contract generally, rather than the arbitration clause specifically, are properly left to the arbitrator in the first instance." *Id.* at ¶ 42.

**{¶29}** The arbitration clause is not unconscionable unless (1) there is a lack of meaningful choice (procedural unconscionability) *and* (2) the terms unreasonably favor the other party (substantive unconscionability). *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 20. The burden to prove both aspects of unconscionability is on the challenger of the arbitration clause. *Id.* at ¶ 30.

{¶30} In evaluating the argument on procedural unconscionability, we consider facts such as: age, education, intelligence, business acumen, experience, and general ability to understand terms; the identity of the contract drafter; the ability to negotiate changes; the pre-printed nature of a form; alternative sources for the challenger's purchase; and whether the stronger party believed there was no reasonable probability the weaker party could fully perform or knew the weaker party would not benefit from the contract. *Id.* at ¶ 23-24. "All of the factors must be examined and weighed in their totality in determining whether an arbitration agreement is procedurally unconscionable." *Id.* at ¶ 30.

{¶31} Here, Appellant, through counsel, filed an opposition to the motions to stay pending arbitration and a sur-reply to Appellees' replies in support of their motions. Appellant argued the contract was "forced" upon him because the purchase agreement shows on its face it was a pre-printed standard form provided by Appellee Kiko (with blanks for specific items such as the purchase price) and thus there would not have been an opportunity to negotiate the pre-printed terms. In addition to claiming a disparity in bargaining power, Appellant's opposition to the stay claimed there was "an enormous disparity in knowledge" and surmised Appellees held greater knowledge about the zoning issue. No affidavits were attached.

{¶32} The evidence does not show an absence of meaningful choice as required for procedural unconscionability. The arbitration clause in the purchase agreement was not in small print compared to the remainder of the agreement or buried among other terms. The purchase agreement was a one-page contract, and the arbitration clause was clearly labeled with "ARBITRATION" as the heading. Appellant did not mention his age, education, experience, or understanding. There was no evidence placed on the record regarding a lack of legal representation or knowledge about arbitration or negotiation.

{¶33} Appellant agreed to a purchase price of $1.496 million for three properties (in two counties) and put $149,600 down. Appellant acknowledged entering the purchase agreement for his business endeavor. As Appellees point out, this suggests Appellant possessed some business acumen, an ability to go elsewhere for his purchase, and the power to attempt to negotiate the arbitration clause. There was no evidence on the circumstances existing before the execution of the agreement. We also note the mineral

rights, which were part of the typed contract, were eliminated by handwritten notation and initialed. Although this change favored the seller, it indicated the terms of the realtor's pre-printed contract were not entirely set in stone.

{¶34} Without evidence of the inability to negotiate and status as the weaker party, Appellant has not supported the characterization of the agreement as a contract of adhesion, which is described as "a standardized form contract prepared by one party, and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract terms." *Taylor Bldg. Corp.*, 117 Ohio St.3d 352 at ¶ 49. Moreover, "even a contract of adhesion is not in all instances unconscionable per se." *Id.* at ¶ 50 (noting the benefits of form contracts to consumers in reducing costs).

{¶35} Appellant points out he would not have entered the purchase agreement if he had known about an alleged zoning issue, suggesting Appellees knew he would not benefit from an agreement for property zoned as residential. Appellees note Appellant's complaint specifically acknowledged Appellees used the term "grandfathered" for commercial use, indicating the zoning was not actually commercial. The details of the zoning, the grandfathering, the parties' zoning knowledge or ability to gain such knowledge, and any inability to petition to extend the grandfathering upon a sale were not provided to the trial court. The factual claims relied on by Appellant are unsupported by affidavit for purposes of the unconscionability argument.

{¶36} In *Hayes*, the Supreme Court reversed an unconscionability decision after concluding the appellate court erroneously relied upon facts that were not placed in evidence. *Hayes*, 122 Ohio St.3d 63 at ¶ 25-27, 44 ("The only facts in evidence in this case pertaining to procedural unconscionability are [the buyer's] age and the terms contained in the agreement she signed."). The party challenging the arbitration clause's enforceability has the "burden to come forward with evidence supporting her challenge." *Id.* at ¶ 27 (and alternatively finding age, which was the only factor in evidence, did not alone satisfy the test). *See also Harbour Portfolio VII, LP v. Pulley*, 1st Dist. Hamilton No. C-150080, 2015-Ohio-4399, ¶ 10 (reversing a trial court's stay denial where the opponent of the stay did not meet the burden by presenting an affidavit or other evidence on her age, education level, intelligence, business acumen and experience). *Compare Williams*, 83 Ohio St.3d at 472 ("Williams filed an affidavit in the trial court regarding the arbitration

clause's inclusion in the loan agreement, to support her challenge to the specific validity of the arbitration clause.").

{¶37} Appellant submitted no affidavit in support of his procedural unconscionability claims (and did not request a hearing in which to present testimony on the matter). Although counsel's statements in a memorandum can concede points in favor of the opposing party, counsel's arguments are not evidence and cannot be presented as facts to support the represented party. We cannot say there was an absence of meaningful choice in entering the agreement, and thus, there was no showing of procedural unconscionability. In any event and as discussed next, the arbitration clause is not substantively unconscionable.

{¶38} When evaluating an argument on substantive unconscionability, the court considers whether the agreement's terms are commercially reasonable. *Hayes*, 122 Ohio St.3d 63 at ¶ 33. Depending on the content of a particular agreement, some relevant considerations may include the ability to predict the cost of future liability, industry standards, the fairness of the terms, and the charge for the product or service. *Id.* Here, the arbitration clause required binding arbitration for any disputes concerning the contract or the performance of the owners or the realtor related to or arising out of the contract. The applicable rules were disclosed to be those of the American Arbitration Association or similar organization. The first party to file had the right to select the arbitration association. The clause specifically informed the parties they were waiving the right to a court or jury trial.

{¶39} First, Appellant argues this limitation of the forum to arbitration is substantively unconscionable. As this is the very essence of an agreement to arbitrate, Appellant's argument is wholly without merit. "[W]aiver of the right to trial by jury is a necessary consequence of agreeing to have an arbitrator decide a dispute, and this aspect of an arbitration clause is not substantively unconscionable." *Id.* at ¶ 34, citing *Taylor Bldg. Corp.*, 117 Ohio St.3d 352 at ¶ 55.

{¶40} Next, Appellant complains the arbitration clause is substantively unconscionable as it weakens certain claims (such as his fraud claim) by improperly limiting his damage recovery. The parties' arbitration clause limits certain aspects of recovery by containing a waiver of the right to recover incidental, consequential, or

punitive damages and by requiring the parties to pay their own attorney's fees and split the costs of arbitration.[4]

**{¶41}** The Supreme Court has observed an arbitration provision "is not commercially unreasonable" where it required the parties to each bear their own attorney fees and costs, which requirement "is equitable to both parties" and "is not one-sided or oppressive." *Hayes*, 122 Ohio St.3d 63 at ¶ 35-36. On the subject of eliminating the ability to recover punitive damages, the *Hayes* Court also concluded the arbitration clause's waiver of the right to seek punitive damages was commercially reasonable. *Id.* at ¶ 35-36 (even where the limitation only applied to the residents of the nursing home). Here, the waiver of punitive damages applied to both sides with both parties responsible for their own attorney's fees and with arbitrator costs split evenly among all parties. This was commercially reasonable under *Hayes*.

**{¶42}** As for the other damage limitations, it was not merely Appellant who waived the ability to seek consequential or incidental damages. Applying the analysis from *Hayes*, this waiver was commercially reasonable as it was "equitable to both parties" and "not one-sided or oppressive." *See id.* at ¶ 35. Similarly, the Eighth District rejected an unconscionability argument regarding limitation of damages where the arbitration clause said the arbitrator had no authority to award consequential or indirect damages (or punitive damages). *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 35-37. Because the elimination of consequential or incidental damages did not unreasonably favor one side, it was not substantively unconscionable. *See Taylor Bldg. Corp.*, 117 Ohio St.3d 352 at ¶ 32.

**{¶43}** Appellant also complains the arbitration clause says, "issues of arbitrability shall be determined solely by the arbitrator." Appellant cites no law in support of an unfairness argument. In general, the parties can agree to submit arbitrability questions to the arbitrator. *Belmont Cty. Sheriff v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 104 Ohio St.3d 568, 2004-Ohio-7106, 820 N.E.2d 918, ¶ 13 ("Unless the parties

---

[4] Consequential damages are those "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act" (which may include business profits). Incidental damages are those "[l]osses reasonably associated with or related to actual damages" which can include a seller's expenses reasonably incurred in caring for the subject of the sale after a buyer's breach or a buyer's similar expenses in caring for the subject after a seller's breach. *Black's Law Dictionary* (11th Ed. 2019).

clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").  In any event, as Appellees point out, Appellant did not challenge arbitrability of the issues *under the terms of the agreement*.  The real estate exception was a statutory issue of exemption that was presented to the trial court (and is now before this court), regardless of the cited portion of the arbitration clause.  And, unconscionability was an issue dealing with enforceability not arbitrability (and was presented to the court as well).

**{¶44}** Finally, while generally stating the agreement was substantively unconscionable, Appellant's brief presented a case citation with a parenthetical showing the cited court held an arbitration provision was unconscionable because it increased the financial burden on the buyer when pursuing a claim and did not disclose the costs of arbitration or mention they would be substantially higher than litigation.  *See Porpora v. Gatliff Bldg. Co.*, 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, ¶ 18 (9th Dist.).  Appellant's reply brief disclosed his intent to utilize this holding as an argument.  Appellant's memorandum in opposition to a stay presented this topic to the trial court in the same manner (only disclosing his intent to set forth this specific argument in his sur-reply after merely citing the case earlier).

**{¶45}** A citation's parenthetical is not a proper method for a party to raise a specific argument, nor is a reply brief on appeal or a sur-reply brief in the trial court.  Regardless, the *Porpora* decision initially supported the substantive unconscionability decision by pointing to the prohibition on the consumer proceeding to arbitration until after the residential builder provided a certificate of substantial completion (and then added the observations about the costs of arbitration).  *Id.* at ¶ 15.  This is not similar to the situation in the case at bar.  Additionally, the Ninth District subsequently concluded the arbitration costs listed in the American Arbitration Association's rules "could easily be exceeded by litigation expenses, both at the trial court and appellate level" while pointing out the appellants failed to produce evidence of the expected cost differential.  *English v. Cornwell Quality Tools Co.*, 9th Dist. Summit No. 22578, 2005-Ohio-6983, ¶ 17 (and distinguishing *Porpora* as involving a condition precedent to arbitration).

**{¶46}** In any event, Appellant failed to prove this unconscionability claim.  As the Supreme Court pointed out, "arbitration is favored because it provides the parties thereto

with a relatively expeditious and economical means of resolving a dispute." *Hayes*, 122 Ohio St.3d 63 at ¶ 15. "[T]he United States Supreme Court held that an arbitration agreement that does not mention costs and fees is not per se unenforceable on the theory that it fails to protect a party from potentially high arbitration costs, because the mere risk that a plaintiff would be forced to pay exorbitant costs is too speculative to justify invalidation of the arbitration agreement." *Taylor Bldg.*, 117 Ohio St.3d 352 at ¶ 57, citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90-92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). "The lack of evidence before the trial court of excessively high arbitration costs undercuts the [buyer's] claim that arbitration costs would be prohibitively expensive." *Id.* Likewise, there is no indication the cost of arbitration would be higher than the expenditures required for court litigation.

**{¶47}** Appellant had the burden to prove the arbitration provision was both procedurally and substantively unconscionable but failed to do either. Accordingly, this assignment of error is overruled.

**{¶48}** For the foregoing reasons, the trial court's decision granting a stay pending arbitration is affirmed.


Waite, J., concurs.

D'Apolito, P. J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**